(No. 42450.—■■■■■■■■■)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
GUIOMAR COVINGTON, Appellant.

*Opinion filed December 4, 1970.*

TYRONE C. FAHNER, of Chicago, (PAUL J. RICE and
CHARLES O. FARRAR, of counsel,) for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (JAMES B. ZAGEL, Assistant Attorney General, and ROBERT A. NOVELLE and ROBERT L. BEST, Assistant State's Attorneys, of counsel, for the People.

Mr. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

In a Cook County circuit court bench trial, defendant Guiomar Covington was found guilty of armed robbery and murder, and sentenced to the penitentiary for concurrent terms of 10 to 20 years, and 30 to 60 years, respectively. On this direct appeal (see our Rule 603, 43 Ill.2d R. 603) Covington claims that his rights under the fifth, sixth and fourteenth amendments to the Federal constitution were violated at trial in the admission of identification testimony, and in the admission, for impeachment purposes, of an exculpatory statement made by defendant in an earlier judicial proceeding.

On March 1, 1968, at 10:00 A.M., Minnie Harris arrived for work at a men's clothing store owned by George Hanus. She was greeted by an unmasked gunman who took her purse and tied her up. She was made to lie alongside Hanus, who had been shot in the stomach and also was tied up. A few minutes later, Kenneth Robinson and Carl Cordiel entered the store to return a pair of slacks purchased earlier from Hanus. The gunman took $21 from Robinson's pocket and tied the two alongside the others. Hanus pleaded, "don't let me die", and the assailant told him to be quiet or he would get the same as he got before. Hanus died from the gunshot wound a short time later. Minnie Harris gave the police a description of the assailant at the scene, and that evening she was taken to the police station along with Robinson and Cordiel. The three were separated and each gave a description to a police artist, who drew a composite picture of the assailant. On March 5, Minnie Harris and Kenneth

Robinson were separately shown a group of pictures from which each selected a picture of one Robert Lee Jones as resembling the assailant. At a lineup that evening, viewed separately by Harris, Robinson, and Carl Cordiel, each witness stated that Jones was not the assailant. On March 9, Minnie Harris viewed six photographs of Negro males, and identified Covington's picture as definitely being that of the gunman. Kenneth Robinson viewed the same photographs on March 14, and also positively identified defendant's picture. On March 13, Minnie Harris identified defendant in person in the hallway of the Criminal Courts Building. Covington was then appearing with counsel on another charge, and was later arrested in connection with the present charges in the presence of counsel as he left the building. Both witnesses Robinson and Harris saw defendant again at the coroner's inquest on April 30. Cordiel had meantime left the city and could not be found for testimony.

Covington was brought before the court on March 14, for a preliminary hearing. The State requested a continuance until after the inquest, and the court set a date. Thereupon, Covington asked, "Am I allowed to say something?" The court asked defendant what he wanted to say, and the following exchange took place: "Judge Ryan, I have a case here already for armed robbery and murder, which the witnesses have already said that I was not guilty of this. All right, now they turn right around, a week later, after I'm out. I talked to them officers; they haven't asked me anything, where I was or anything. I was at home and I could account for my time and I have reliable witnesses, people from Metropolitan Insurance Company and—

"THE COURT: What time did this happen?

POLICE OFFICER: Between 9:30 and 10:00 o'clock.

Mr. COVINGTON: At 9:30, I was home with my kids. I didn't go to school and I have four kids and no wife and I have to be at home.

THE COURT: Where is your lawyer today?

Mr. COVINGTON: I don't know where Judge Smith is today.

THE COURT: Tell him to come in on a petition."

At trial, defendant introduced an alibi through the testimony of his mother, his cousin, a family friend and himself. The testimony of the relatives and friend was inconsistent and impeached in many respects; to impeach defendant's testimony, the State introduced his prior exculpatory in-court comment, but only that portion thereof regarding alleged alibi witnesses from the insurance company.

Defendant contends that the admission of this statement, made in a judicial proceeding without the presence of counsel, violated his constitutional rights, particularly as set forth in *Miranda* v. *Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, and *White* v. *Maryland,* 373 U.S. 59, 10 L. Ed. 2d 193, 83 S. Ct. 1050. The State argues that the statement was not unconstitutionally elicited in violation of defendant's *Miranda* fifth amendment rights, since he had been advised of his rights upon arrest in the presence of counsel, and the statement was volunteered, rather than elicited through custodial interrogation. Regarding the sixth amendment right-to-counsel claim under *White* v. *Maryland,* recently extended in *Coleman* v. *Alabama,* 399 U.S. 1, 26 L. Ed. 2d 387, 90 S. Ct. 1999, to require presence of counsel at all preliminary hearings, the state points out that no preliminary hearing was held on March 14, or indeed any other date, since it became unnecessary upon the subsequent return of an indictment. We note in this connection that we have held the dictates of *Coleman* to be applicable prospectively only. (*People* v. *Adams,* 46 Ill.2d 200.) Furthermore, the State suggests, defendant was not deprived of the right to the assistance of counsel at a critical stage of the prosecution, since he already had counsel at the time of the proceedings—counsel simply did not appear. The court continued the proceedings without embarking upon any critical stage, and indicated to defendant

that he had not foreclosed counsel's opportunity to appear in defendant's behalf at any time "on a petition". *Cf. People v. May,* 46 Ill.2d 120.

We need not analyze the complexities of defendant's objection to the use of his exculpatory statement in the impeachment of his alibi testimony. Were we to find that such a volunteered statement is inadmissible at trial due to the fact that it occurred in the absence of counsel at a judicial proceeding, albeit one at which no action was taken save the setting of a date for preliminary hearing, we would nevertheless find the admission of defendant's statement here to have been harmless error. In the first instance, the statement introduced by the State was not conclusive impeachment. In that statement, Covington did not definitely claim to be with "people from Metropolitan Insurance Company" at the particular time covered by his alibi. More important in our determination that the use of the statement was harmless error, if error at all, is the fact that the alibi was otherwise impeached in several respects. Defendant's mother testified that he had left his apartment briefly to go to a nearby restaurant at 9:10 or 9:15 A.M., wearing a sweatshirt and blue pants; Covington testified that he left at 9:30. As defense counsel brought out at trial, he had said in his statement to the court on March 14 that he had been home at 9:30, and had to be there since he had four children and no wife. Fred Williams, the friend of the family, stated that he had seen defendant in the restaurant at 9:00 A.M. wearing a blue shirt and pants. Williams and Covington both said he was wearing a gun holster that morning, but his mother was positive that he was not. Defendant's cousin claimed that when she and her daughter arrived at the apartment that morning, Covington had already returned from the restaurant. At the coroner's inquest, the cousin had testified that she was already in the apartment when Covington returned from the restaurant. The cousin said that the children of defendant's niece were not present. Covington claimed that

those children were present. The cousin said she could recall March 1st because her husband had been paid the previous day and she cashed the check on March 1st at Byrd's Supermarket. The State proved that her husband had not been paid on the previous day, and that the check in question was cashed by him at a currency exchange. In the context of this unstable alibi testimony, we are convinced that any error in the admission of defendant's statement was harmless beyond a reasonable doubt.

A pre-trial hearing was held on Covington's motion to suppress the identification testimony of Minnie Harris and Kenneth Robinson. The court denied the motion, and the identification testimony at trial consisted of Minnie Harris's in-court identification, her March 9 photographic identification, and her March 13 encounter with defendant in the Courts Building, plus Kenneth Robinson's in-court identifiication, his March 14 photographic identification, and his April 30 encounter at the coroner's inquest. We find no merit in the objections based upon *Stovall* v. *Denno,* 388 U.S. 293, 302, 18 L. Ed. 2d 1199, 1206, 87 S. Ct. 1967, 1972. The Supreme Court there held that a defendant is entitled to relief when a confrontation "was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law." Neither witness confronted Covington after the robbery without first positively identifying his picture; it was not shown that either witness expected to confront Covington or any suspect at the times of the challenged-in-person identifications, or had been subjected to any form of suggestion. Rather, they each spontaneously and immediately recognized defendant as the assailant; each witness had ample opportunity to observe the assailant at the scene of the crimes, and each testified to a positive recollection of his appearance based upon that observation. Minnie Harris's description of the assailant fit defendant in most significant respects; and each witness independently determined that the initial suspect, Robert Lee

Jones, though resembling the assailant, was definitely not he. In these circumstances, there can be no question as to the validity of the in-person identifications under the *Stovall* due process standard. The initial photographic identifications are similarly acceptable under the applicable test enunciated in *Simmons* v. *United States,* 390 U.S. 377, 384, 19 L. Ed. 2d 1247, 1253, 88 S. Ct. 967, 971: "* * * convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." The witnesses each positively identified defendant's photograph from a group of six black and white photos of Negro males, with no suggestion; the trial court received the photographs in evidence at the pretrial hearing, and there is no suggestion that the group of photographs were other than a fair selection, with no unique emphasis placed upon defendant's photograph. We find no violation of the *Simmons* standard.

Covington also contends that the dictates of *Wade-Gilbert* were violated in the pre-trial confrontations. (*United States* v. *Wade,* 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926; *Gilbert* v. *California,* 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951.) Defendant was viewed by both witnesses at the coroner's inquest on April 30; however, his counsel was present, and we therefore find no violation of the right to counsel at the confrontation. The other pretrial confrontation involved only Minnie Harris, as she encountered defendant in the hallway, and within a courtroom of the Criminal Courts Building on March 13. Covington had occasion to be in the courtroom for proceedings on an unrelated charge, and was represented by counsel, but it appears that his counsel was not present at the time Minnie Harris recognized him. The State maintains that the *Wade-Gilbert* decisions are not controlling here, since the confrontation took place not only prior to indictment (see *People* v. *Palmer,*

41 Ill.2d 571), but even prior to arrest on these charges and while Covington was not in custody. (See *People* v. *Eubank*, 46 Ill.2d 383; *People* v. *Cesarz*, 44 Ill.2d 180; *cf. People* v. *Robinson*, 46 Ill.2d 229.) We need not address the contention, however. Even assuming *arguendo* that the confrontation is subject to the *Wade-Gilbert* rulings, we are of the opinion that Minnie Harris's in-court identification was properly admitted since it was clearly based upon an origin independent of the March 13 confrontation, and that any error in the admission of evidence of that confrontation was harmless beyond a reasonable doubt. (See *Gilbert* v. *California*, 388 U.S. 263, 274, 18 L. Ed. 1178, 1187, 87 S. Ct. 1951, 1957.) Defendant was positively identified by Kenneth Robinson in court, and this idetntification was supported by evidence of his photographic identification and his encounter at the April 30 inquest. Furthermore, the clearly admissible identification by Minnie Harris in court was similarly supported. We believe that in this context there can be no reasonable doubt that evidence of the March 13 confrontation was merely cumulative and harmless.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*