THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LAMONT IRONS *et al.*, Defendants-Appellants.

(No. 72-106;

Fifth District—May 27, 1974.

126

Robert E. Farrell and Richard E. Cunningham, both of Office of State Appellate Defender, of Mt. Vernon, and Frank Kerzisnik, Senior Law Student, for appellants.

Robert H. Rice, State's Attorney, of Belleville (James W. Jerz and Martin P. Moltz, both of Model District State's Attorneys Office, of counsel), for the People.

Mr. JUSTICE CREBS delivered the opinion of the court:

Defendants were convicted in a jury trial in the Circuit Court of St. Clair County on each of three counts of an indictment charging armed robbery. They were sentenced to the penitentiary for terms of not less than 8 nor more than 10 years. A third person, also charged in the indictment, was not apprehended. In this appeal it is contended that the trial court erred in denying a motion to suppress identification testimony and in admitting certain physical evidence. It is also contended that the State failed to prove guilt beyond a reasonable doubt and that the sentences imposed were excessive.

The robbery occurred about 6:10 P.M. on March 13, 1971, when three men entered the Comet Liquor Store in East St. Louis and at gun point took $335 from the cash register, $125, a watch and ring from a customer, and $31 from a part-time employee. When the men came in,

all three of the victims were in the back part of the store watching television. They were told that "This is it," and were forced to assume kneeling positions in the back storage room with their faces to the wall. When the cash register, located at the front of the store, was found to be locked the proprietor, Mr. Newell, was ordered to come and open it. One of the robbers demanded that he remove the bills and change and put them on the counter. Having done so, he was ordered to put it all in a bag and then was escorted back to the back room where the robbers proceeded to rifle the pockets of the other individuals, taking their money and jewelry.

At the trial all three victims testified that at the time of the robbery it was still light outside and that the store and back room were well lighted with fluorescent lights. Robinson, the part-time employee, and Domescik, the customer, testified that from their first view of the robbers as they entered the store, each of them looked to be of slight build, young, slender and about 5′ 9″ to 5′ 10″ tall. Having had so little opportunity to observe the robbers before being forced to kneel and face the wall, they stated they were unable to identify the defendants, but could only say that defendants resembled them in appearance. Newell testified that he had a good look at all of the robbers and that he was positive of his identification of defendants based on his face-to-face confrontation with them during the several minutes it took to open and empty the register and place its contents in a bag.

Another witness, Clifford Williamson, stated that at the time of the robbery he was standing in front of an oil station across the street about 50 or 75 yards from the liquor store. He noticed a 1954 Willys automobile in the liquor store parking lot, and though he never did see anyone leave or enter it, he did see it being driven away immediately after the robbery. A week later defendant Irons was arrested in a 1954 Willys, and on the basis of Williamson's testimony that this was the same car he had previously seen at the time of the robbery, it was admitted into evidence.

Both defendants offered alibi evidence, Robinson to the effect that he was at a friend's house at the time, which testimony was supported by the friend; and Irons to the effect that he was playing pool at a pool hall, which evidence was offered by three friends.

■■ We shall first consider the contention that the Willys automobile should not have been admitted into evidence. Williamson testified that he first noticed the Willys because he was interested in antique cars, that he had once owned a 1937 Willys and was familiar with the make, that 1955 was the last year it was manufactured, and that he had not seen one in 5 or 6 years. He also noticed that this particular car was a two-tone, dark-over-light, that it was a four-door, and that most of the

Willys he had ever seen were two-door sports cars. Defendants argue that such evidence was inadmissible because it was offered as testimony of an expert and Williamson was not so qualified. It is also argued that the car was never connected with the robbery. We cannot agree. The function of an expert witness is to draw inferences and reach conclusions from facts peculiarly within his knowledge and ordinarily beyond the capacity of the jury. Here, the witness merely recited facts which he observed or which were within his knowledge, and the inferences and conclusions to be drawn from those facts were left to the jury. To the witness the car was distinctive and it was the jury's perogative to determine whether the witness could reasonably identify it the next time he saw it. Likewise, that it was connected to the crime and used by robbers was a reasonable inference for the jury to make from the facts before it. We find that the car was properly admitted into evidence as one facet to be considered in assessing defendant Irons' connection with the robbery.

Defendants' next contentions involving the alleged error of the trial court in refusing to suppress the identification testimony of Newell, and the failure of the State to prove guilt beyond a reasonable doubt, we shall discuss together because of their interrelation. Newell's positive in-court identification is challenged on the grounds that it was unfairly influenced by unnecessarily suggestive police procedures in showing Newell pictures of two of the defendants prior to trial, and in holding a "tainted" line-up. At the hearing on the motion to suppress, it was brought out that on the day following the robbery Newell was shown two police mug shots, one of defendant Robinson, and one of Grimes (the accused who was not apprehended). Newell stated that though it was his opinion at that time that they looked like the men who robbed him he did not then make a positive identification because he wanted to see them in person and did not want to base an identification on mere photographs. At a police line-up held on March 24, 1971, Newell positively identified both Robinson and Irons. Defendant contends that the line-up was impermissibly suggestive because it contained only these two defendants and a third man who bore no physical resemblance to either of them. Further, Irons claims to have been prejudiced because he had to appear in the line-up with Robinson who had already been identified by photograph, and also because he was denied the right to counsel which he had previously requested.

We do not believe these contentions are well taken. The pictures were shown the day following the robbery and before anyone was in custody. Such a procedure is widely and effectively used in criminal law enforcement as a means of apprehending offenders as quickly as possible

and is not to be condemned in and of itself. (*Simmons v. United States*, 390 U.S. 377, 19 L.Ed.2d 1247, 88 S.Ct. 967.) Whether such a showing is impermissibly suggestive is dependent upon the individual facts of each case. Here, it is true that only one other man appeared in the line-up with defendants, but a line-up is not rendered defective or prejudicial merely because of its numerical composition or the manner in which it is conducted as such matters go only to the weight of the identification testimony. (*People v. Williams*, 117 Ill.App.2d 34.) Also, Irons was not provided with counsel, but one who has not been formally charged does not have a right to counsel as a condition to his appearance in a line-up. *People v. Burbank*, 53 Ill.2d 261.

■■ Considering these matters individually and collectively we do not believe them to be so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification. In any event, whether denial of due process actually occurred depends on whether the witness' later indentification at the trial was dependent on or influenced by such events. The rule is that where a line-up or other confrontation is held improper, the in-court identification is nevertheless admissible if it has a prior independent origin. (*People v. Spencer*, 7 Ill.App.3d 1017.) Here, the witness had an opportunity to observe the robbers face to face for a number of minutes in a well lighted store as he complied with their demand to empty the cash register. Also, the general physical descriptions given shortly after the robbery matched those of defendants. Such facts reveal a sufficiently independent and uninfluenced source to stand as the basis for the witness' in-court identification, and we find the trial court properly allowed the admission of such testimony.

■■■ As to whether defendants were proved guilty beyond a reasonable doubt, the rule is well established that a positive identification by even one witness, who had a good opportunity to observe an accused in terms of length of time, proximity and lighting conditions, is sufficient to sustain a verdict of guilty. (*People v. Solomon*, 24 Ill.2d 586; *People v. Kriston*, 12 Ill.App.3d 18.) Obviously, the jury in the case before us did not believe defendants' alibis, nor were they obliged to. (*People v. Taylor*, 8 Ill.App.3d 727.) In the exercise of their function to weigh the evidence and determine the credibility of witnesses, they apparently did believe Newell, and it is not within our perogative sitting as a court of review, to reverse their finding on the grounds of insufficiency of evidence unless there is a reasonable and well founded doubt of guilt, and the verdict is found to be palpably contrary to the weight of the evidence. (*People v. Rose*, 124 Ill.App.2d 447.) As indicated above we have reviewed the record in detail, and, applying these rules, we have found no basis for disturbing said verdict or for substituting our judgment for that

of the jury. Accordingly, the judgment of the Circuit Court of St. Clair County with respect to both defendants is affirmed.

██ However, we do believe that this is an appropriate case in which to exercise our power to reduce sentences. Armed robbery is a Class One felony under the Criminal Code (Ill. Rev. Stat. ch. 38, sec. 18—2), and, as provided by section 5—8—1(c)(2) of the Unified Code of Corrections (Ill. Rev. Stat., ch. 38, sec. 1005—8—1(c)(2)), "the minimum term therefore shall be 4 years unless the court, having regard to the nature and circumstances of the offense and the history and character of the defendant, sets a higher minimum  *  *  *." At the time of the offense defendant Irons was 18 years of age and defendant Robinson was 17 years of age. Neither one of them was convicted previously. We do not deprecate the seriousness of their crime, but the sentences imposed can hardly be said to be indeterminate, nor do they give effect to the possibility of defendants' rehabilitation. We therefore reduce the sentence of each defendant to a minimum of 4 years and a maximum of 10 years.

Judgment affirmed, sentence modified.

G. MORAN, P. J., and CARTER, J., concur.