THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BENNIE KINZIE et al., Defendants-Appellants.

(No. 60461;

First District (1st Division)—August 18, 1975.

James J. Doherty, Public Defender, of Chicago (Louis Caprio and Judith A. Stewart, Assistant Public Defenders, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Raymond J. Prosser, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE EGAN delivered the opinion of the court:

The defendants, Bennie Kinzie and Jerry Winn, were convicted of robbery after a bench trial and sentenced to the Illinois Department of Corrections for two to eight years.

Shortly before midnight on June 12, 1973, Robert Jackson left Sportsman's Park Race Track in Cicero where he was employed as a cashier. He was carrying approximately $200 in cash as he approached his car in the parking lot which was well lighted. His car was a 1973 green Chevrolet, license plate number BP 8227. As he attempted to put his key in the door lock, two men approached him from the front, and one of them said, "This is a stick-up." The light in the parking lot reflected on their faces. Jackson later identified both defendants as the two men. The defendant, Winn, was holding a "shiny object" in his hand. Suddenly, Winn put his arm around Jackson's neck and threw him to the ground; then Winn "rammed his knee" in Jackson's ribs more than once and proceeded to choke him. Jackson was almost rendered unconscious, and both men went through his pockets. They took $200 in cash, his wrist watch and car keys; they then drove off in Jackson's car leaving him lying on the ground. The entire robbery, according to Jackson's estimate, took approximately five to ten minutes.

Minutes later, Officers Swanson and Vrtis of the Chicago Police Department were in a squad car at 4450 West 26th Street, approximately one mile from Sportsman's Park Race Track, when they observed a 1973 Chevrolet approaching from the rear without headlights. The Chevrolet passed the squad car, and Officer Vrtis observed the two occupants. The officers followed the Chevrolet and signaled the driver to pull over. After traveling several more blocks, the Chevrolet slowed down and its two occupants alighted and fled in opposite directions. Swanson pursued the passenger of the Chevrolet on foot coming within six to eight feet of him before losing him in an alley. Swanson later identified the defendant Winn as the passenger whom he had chased. Swanson put out a radio call that he needed assistance and was in pursuit of a male Negro in the vicinity of 25th Street.

Officer Richard Oswald and his partner were in a police car at 25th and Kostner when they heard Swanson's radio message. About a minute later, Oswald saw the defendant Winn running through a gangway southbound, approximately one-half block from the location of the radio call

for assistance. Oswald placed Winn under arrest and took him to Swanson's squad car.

In the meantime, Officer Vrtis arrested the driver of the Chevrolet after a chase of "a matter of seconds." The man he apprehended was the defendant Kinzie. The license number of the 1973 Chevrolet that they had followed was BP 8227. Kinzie was searched and Jackson's wrist watch was found in his pocket. No weapons nor any money were recovered from either defendant.

Approximately 12 hours later, Jackson identified both defendants in a line-up consisting of three black males at the Cicero police station.

Neither defendant testified; but two witnesses testified that Winn was in a restaurant at 4134 West 16th Street in Chicago and left between 11:45 p.m. and midnight.

■■ The defendants first contend that they were not proved guilty beyond a reasonable doubt. The evidence against Kinzie is overwhelming. The evidence against Winn consists of identification by Jackson as the man who robbed him, the identification by Swanson as a passenger in Jackson's car, and the arrest by Oswald as Winn was "running through a gangway" a short distance from the stolen car. Although Winn submitted two alibi witnesses, the trier of fact was not required to believe them. (*People v. Huey*, 17 Ill.App.3d 245, 249, 307 N.E.2d 767. Both defendants were proved guilty beyond a reasonable doubt.) *People v. Scott*, 20 Ill.App.3d 880, 314 N.E.2d 671.

The defendants also contend that the suggestive line-up procedures employed by the police, the failure to make a photographic record of the line-up and the State's failure to name or call any officer present for the line-up were circumstances that denied the defendants due process of law.

■■ The burden of proving that a pretrial line-up procedure is unfair rests with the defendants. (*People v. Blumenshine*, 42 Ill.2d 508, 511, 250 N.E.2d 152.) When Jackson was asked if the police told him they had the two men that had robbed him, he testified: "They said they had a line-up for me to look at and see if I could pick them out, which I did." This case is factually inapposite to *People v. Lee*, 54 Ill.2d 111, 295 N.E.2d 449, cited by the defendants, in which the police called the witness and told him they "had the guys who did it. Come on down and identify them." When the witness arrived at the police station, the defendant was brought in handcuffed to a suspect whom the witness had previously identified.

■■ *People v. Irons*, 20 Ill.App.3d 125, 312 N.E.2d 664, is a clear answer to the defendants' contention that the three-man line-up containing the

two defendants was in and of itself impermissively suggestive. The court said (20 Ill.App.3d 125 at 129):

"Here, it is true that only one other man appeared in the line-up with defendants, but a line-up is not rendered defective or prejudicial merely because of its numerical composition or the manner in which it is conducted as such matters go only to the weight of the identification testimony. [Citation.]"

See also *People v. Rosenborgh*, 21 Ill.App.3d 676, 315 N.E.2d 545.

■■ The defendants have not cited a case, nor do we believe one exists, that holds that failure to take a picture of the line-up is a denial of due process. We cannot see how the failure to take a picture would have any "suggestive" impact on an identification.

On August 20, 1973, the defendants filed a discovery motion asking for the names of all witnesses to the defendants' identification. On August 30, the State answered and listed as possible witnesses Robert Jackson, Officers Swanson and Vrtis and Officer Erjevic of the Cicero Police; and medical personnel at McNeal Hospital. On September 24, the defendants waived a jury and at the same time filed a motion to suppress the identification testimony; a motion to quash the arrest and suppress evidence; and a motion to suppress a statement. At the request of the defendants' attorney, the motions were heard with the trial.

The State called Officer Erjevic's partner, George Buenik, a police officer for Cicero. He testified that Jerry Winn was brought to the Cicero police station about 5:30 a.m. and Bennie Kinzie at about 11 a.m.; and that a line-up was held about noon. Cross-examination disclosed that he was not present at the line-up and that he did not know what police officers from Cicero were present. Officers Swanson and Vrtis had testified that they had nothing to do with the line-up.

The defendants do not now maintain that the erroneous information given by the State in its answer to the defendants' discovery motion of itself requires a new trial, but, rather, that it is to be considered with all the other circumstances surrounding the defendants' identification. Again, we fail to see how erroneous information given at the trial some months *after* the identification may be considered to buttress the assertion that the identification procedures were improper. Moreover, the defendants themselves were present at the line-up, but they did not testify in regard to the motion to suppress identification nor did they call any other witnesses.

■■ Their motion was filed on the morning of trial and, at their request, was taken with the trial. At the time the State rested, the defense knew that the witnesses that had been called by the State were not present

at the line-up and that the information given in response to the discovery motion was incorrect. The Assistant State's Attorney pointed out that if he had notice of the motion he could have had the entire police department in court. He also said that Officer Buenik did not know who conducted the line-up and he offered to recall Jackson to find out if he knew. Erjevic was not in court and was out of town. The Assistant State's Attorney offered to turn over whatever was in his file. The defendants' attorney told the court that he knew the State had an officer from the Cicero Police Department; that "maybe I jumped at the wrong conclusion, but I surmised him to be present at the time the line-up was conducted. I had no occasion to think otherwise." The trial was adjourned until the next day, September 25, and on that date the defense attorney issued a subpoena *duces tecum* for Officer Buenik and for any and all reports, records and photos that Buenik might have in the case. On October 15 the trial resumed and the defendants called Officers Oswald and Swanson. After resting, the defense attorney told the court that they had subpoenaed "Officer E. J. Javec" (Erjevic); that Buenik had told the attorney that he though Erjevic had conducted the line-up; that, however, the defense attorney had talked to Erjevic that morning and learned that Erjevic did not conduct the line-up and had no information about the line-up in question. The court then asked if the attorneys wished to be heard on each of their motions. After ruling on the motion to quash the arrest the court said: "Now, there is a motion to suppress identification testimony, do you wish to be heard on that?" The defense attorney then argued in support of the motion to suppress but at no time ever asked the court for additional time to investigate in order to ascertain who it was that conducted the line-up. Nor did he make any point of the absence at the trial of the officers who did in fact conduct the line-up. The defendants are in no position now to complain.

Finally, the defendants contend that the trial judge's remarks and ruling on the motion to suppress the identification show that he used an incorrect standard in passing on the admissibility of Jackson's identification. They interpret his remarks as a holding that, even though the confrontation conducted was unnecessarily suggestive and conducive to irreparable mistaken identification, only the credibility of the testimony and not its admissibility was affected. *People v. Blumenshine*, 42 Ill.2d 508, 511, 250 N.E.2d 152.

The trial judge said that there was an element of suggestiveness in the fact that the two men were placed in a line with only one other man but that he believed that fact affected the weight of the evidence rather than the admissibility. Although an identification procedure may contain some degree of suggestiveness, it is only those procedures which present

a very substantial likelihood of irreparable misidentification which are prohibited. (*Neil v. Biggers*, 409 U.S. 188, 34 L.Ed.2d 401, 93 S.Ct. 375; *Simmons v. United States*, 390 U.S. 377, 19 L.Ed.2d 1247; 88 S.Ct. 967; *People v. Rosenborgh*, 21 Ill.App.3d 676, 315 N.E.2d 545.) We construe the trial judge's remarks to be a recognition that there was some degree of suggestiveness but that it did not present a substantial likelihood of irreparable misidentification. The judgment of the circuit court is affirmed.

Judgment affirmed.

GOLDBERG and SIMON, JJ. concur.