THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DENNIS WOLF *et al.*, Defendants-Appellants.

Second District   Nos. 76-265, 76-267 cons.

Opinion filed May 12, 1977.—Rehearing denied June 16, 1977.

Frank Wesolowski, Public Defender, and A. E. Botti, both of Wheaton (Robert Heise, Assistant Public Defender, of counsel), for appellants.

William J. Scott, Attorney General, of Chicago, and John J. Bowman, State's Attorney, of Wheaton (John F. Podliska, Assistant Attorney General, of counsel), for the People.

Mr. JUSTICE NASH delivered the opinion of the court:

David Kammes and Dennis Wolf were convicted of armed robbery after a joint trial by jury in the Circuit Court of Du Page County. Both men were 16 years of age when the offense occurred and juvenile court

hearings were held authorizing their prosecution as adults. Kammes was sentenced to not less than 4 nor more than 8 years in the penitentiary and Wolf received a sentence of not less than 4 nor more than 6 years. Their separate appeals have been consolidated for consideration and opinion.

On the night of July 31, 1974, Larry Capps, an attendant at the Go-Tane gas station in Lombard, noticed two men walking on Roosevelt Road approximately 40 feet from him in an area illuminated by street lights. Shortly thereafter, the same two men entered the gas station office, produced a gun and demanded money. The office was well lighted by two rows of fluorescent lights and the men were within five feet of Capps for several minutes. They took $170, told Capps to lie on the floor and left the station. When the police arrived Capps described one man as blond, blue eyed, 5' 10" tall, 170 pounds and 19 to 20 years old. The second man he described as dark haired, 6 feet tall, 170 to 185 pounds and 19 to 20 years old. He also described their clothing in detail. Later that evening Capps assisted Detective McKechnie of the Du Page County Sheriff's Department in building a composite likeness of each man using an Identi-Kit.

On September 28, 1974, Capps was shown a group of photographs, including those of the defendants, and identified Kammes as the blond man and Wolf as probably being the dark haired man who had robbed him. Capps testified that in January 1975, he saw Wolf in a courthouse coffee shop and that he observed Kammes in a courtroom when he attended a scheduled court appearance. Neither defendant testified at trial; several alibi witnesses testified on behalf of defendant Kammes.

Each defendant contends that the trial court erred in denying their respective motions to suppress the photographic lineup which, they argue, was so impermissibly suggestive as to taint the witness' later in-court identification of the defendants. The group of photographs was shown to Capps approximately two months after the robbery. He testified at a hearing on a motion to suppress identification that he was shown three or four photographs; at trial he recalled the number as seven. Detective McKechnie testified at each hearing that he showed Capps nine photographs, four of which he had received from the Elmhurst Police Department including pictures of Kammes, Wolf, and another co-defendant, Tim Keniski, who was tried separately. The other five pictures he chose from the files of the Du Page County Sheriff's Department as generally representing the appearance of defendants. The Du Page pictures bore dates on the front, ranging from 1967 to 1972. The defendants contend that the dates precluded Capps from choosing those pictures because the men depicted would by 1974 be much older than Capps had estimated the holdup men to be. Defendants contend also that

it was prejudicial to show Capps pictures of men aged 16 to 18 when he had described the robbers as 19 to 20 years old.

■■ The purpose of the hearing on the motion to suppress photographic identification is to determine whether the methods used in presenting the photos to the witness were so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification of a defendant. (*People v. Brown* (1972), 52 Ill. 2d 94, 285 N.E.2d 1.) The trial court heard the testimony describing the manner in which the photographs were presented to Capps and observed the photos which were used and found that the lineup was not so suggestive as to taint a later identification of defendants by Capps. It is the burden of a defendant presenting a motion to suppress to show that the photographic lineup was in fact unnecessarily suggestive. Capps testified that he paid no attention to the dates on the pictures; he was looking for a face. There was no evidence that Detective McKechnie indicated to Capps that the pictures of two suspects were included in the photos he was to be shown or that he presented them to Capps in a suggestive manner. The factual situation of each case must be considered in order to determine whether there is evidence that such a showing was impermissibly suggestive. (*People v. Irons* (1974), 20 Ill. App. 3d 125, 312 N.E.2d 664.) The trial court found the photographic lineup not to have been impermissibly suggestive. We do not disagree. While it is true that photographic identification may sometimes be unreliable, the procedure is a necessary and effective law enforcement tool which can obviate the needless detention of innocent suspects and assist in the early apprehension of a criminal offender. Its hazards are lessened by the trial process where direct and cross-examination of the witnesses can reveal inaccuracies or inconsistencies which may exist to the trier of fact. (*Simmons v. United States* (1968), 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967.) In this instance, Capps was examined extensively on every aspect of his identification of each defendant.

■■ Even if we had found the photographic lineup to have been impermissibly suggestive, there was clear and convincing evidence that the victim, Capps, had an independent basis for his courtroom identification of both defendants which would overcome any prejudice resulting from the photographic lineup conducted in this case. (*People v. Carroll* (1973), 12 Ill. App. 3d 869, 299 N.E.2d 134, *cert. denied* (1974), 417 U.S. 972, 41 L. Ed. 2d 1144, 94 S. Ct. 3180; *People v. Martin* (1970), 47 Ill. 2d 331, 265 N.E.2d 685, *cert. denied* (1971), 403 U.S. 921, 29 L. Ed. 2d 700, 91 S. Ct. 2240.) Notwithstanding the gap of 19 months between the robbery and defendants' trial, Capps testified that he observed both defendants at close range in a well-lighted room for several minutes at the

time of the robbery; he gave police detailed descriptions of their appearance and clothing. Minor discrepancies between the length of hair on the composites and the actual appearance of defendant Kammes was sufficiently explained by Detective McKechnie who testified that the longer hair styles used with the Identi-Kit were not available on that particular night.

■■ Defendant Kammes contends that the court erred in refusing to allow evidence of the composite process at the motion to suppress the photographic identification, arguing that had the trial court considered what defendant states are the obvious differences between the composite, prepared by Detective McKechnie and Capps, and himself, the court would have excluded the photographic identification of Kammes as completely unreliable. The purpose of the hearing was not for the judge to decide whether the identification of defendant was correct but to determine the fairness of the identification process employed. Detective McKechnie testified at the hearing that the Elmhurst photos were the product of an independent investigation by the Elmhurst Police Department and that the selection of pictures for the photographic lineup was based on the appearance of the suspects, not on the composite constructed by the victim. In addition, the jury received extensive testimony by both direct and cross-examination with regard to the opportunity of Capps to observe the persons who robbed him, the composite process and the photographic identification. We do not find the trial court's decision to limit testimony on the motion to suppress to have been in error.

Defendant Kammes also contends that the pretrial "showup" which took place in a courtroom in January 1975 was unnecessarily suggestive thereby denying defendant due process of law. We cannot agree. Apparently the witness, Capps, was in court under subpoena for a hearing in this case when defendant Kammes, dressed in jail coveralls, was brought into the courtroom by a bailiff. There was no evidence that the confrontation was arranged for identification purposes by the officers and no evidence that Detective McKechnie, who accompanied Capps, said anything whatsoever to him. Capps spontaneously identified Kammes as one of the robbers. As earlier shown, Capps also had an independent prior basis for identification; no showing has been made that this accidental confrontation in a crowded courtroom was conducive to an irreparable mistaken identification. *People v. Covington* (1970), 47 Ill. 2d 198, 265 N.E.2d 112; *People v. Jackson* (1974), 23 Ill. App. 3d 1011, 320 N.E.2d 400.

■■ In his separate appeal, defendant Wolf asserts that the trial court erred in denying his post-trial motion for a new trial based upon newly discovered evidence. Several of his relatives testified at the hearing on the

motion held in April 1976 that Wolf attended a birthday celebration for his aunt in his own home on July 31, 1974, then accompanied several persons to the home of a cousin at about the time of the robbery. The law in Illinois on this issue is unmistakably clear. As stated in *People v. Baker* (1959), 16 Ill. 2d 364, 374, 158 N.E.2d 1, 6:

> "To warrant a new trial, the new evidence must be of such conclusive character that it will probably change the result on retrial, that it must be material to the issue but not merely cumulative, and that it must have been discovered since the trial and be of such character that it could not have been discovered prior to trial by the exercise of due diligence."

To prevent the possibilities of fraudulent claims of newly discovered evidence, such motions are looked upon with disfavor by the courts and subjected to the closest inspection. The defendant has the burden of rebutting the presumption that the verdict is correct; the exercise of the trial court's discretion will be disturbed only where the evidence shows a manifest abuse of that discretion. *People v. Holtzman* (1953), 1 Ill. 2d 562, 116 N.E.2d 338.

Defendant urges that his age and his family's natural reluctance to discuss the charges pending against him explain his failure to uncover these alibi witnesses at an earlier date. The cases on which he relies involve the discovery of new eyewitness testimony which would either rebut the State's case or corroborate the defendant's defense. (*People v. Hughes* (1973), 11 Ill. App. 3d 224, 296 N.E.2d 643; *People v. Pirovolos* (1970), 126 Ill. App. 2d 361, 261 N.E.2d 701; *People v. Upshaw* (1965), 58 Ill. App. 2d 256, 207 N.E.2d 728.) The proffered testimony here is an alibi. The trial court noted that defendant Kammes had offered an alibi defense which was apparently rejected by the jury in light of the positive identification of that defendant by Mr. Capps. Wolf presented no defense at trial but relied on the cross-examination of Capps to create a reasonable doubt of his guilt. In addition, the trial court found that defendant Wolf had failed to show that the newly discovered evidence could not have been adduced had he exercised sufficient diligence. Wolf had counsel when he learned of the charges against him in early October 1974, approximately nine weeks after the offense. He appeared in court several times in November 1974 when the date of the offense was stated. Wolf testified that it was not until after his conviction that he went back and looked at newspapers to try to refresh his recollection of occurrences of that particular date to attempt to aid his recall of his own activities that day. We believe it reasonable to believe that defendant and his family were apprised of the date well in advance of trial and had every opportunity to discover the alibi defense now asserted. (See *People v. Richards* (1970), 120 Ill. App. 2d 313, 256 N.E.2d 475.) No abuse of the

trial court's discretion can be found in its denial of defendant Wolf's request for a new trial on these grounds.

■■ Defendant Wolf also contends that a portion of the prosecutor's closing argument was inflammatory and contained an improper reference to his failure to testify thereby denying him a fair trial. In his argument, defense counsel had attacked the credibility of the State's primary witness, Mr. Capps, by inferring that Capps was only identifying his client because he was part of the "prosecution team" and that the defendants were the "only available people" to pay for the crime. In rebuttal, the prosecutor called that defense "the last refuge of a man who has got nothing else to say, the last refuge of a scoundrel." An immediate objection by defense counsel was sustained by the court and the jury was instructed to disregard the statement. The State argues that this portion of argument was directed at defense counsel in response to defense counsel's attack on Capps. While the remarks were improper, the objection was correctly sustained by the trial court; the general rule is that improper remarks and argument of counsel are not grounds for reversal unless they have caused substantial prejudice to the accused. (*People v. Nilsson* (1970), 44 Ill. 2d 244, 255 N.E.2d 432, *cert. denied* (1970), 398 U.S. 954, 26 L. Ed. 2d 296, 90 S. Ct. 1881; *People v. Phillips* (1970), 126 Ill. App. 2d 179, 261 N.E.2d 469.) No showing of substantial prejudice has been made here.

■■ Defendants each contend that they were not proved guilty beyond a reasonable doubt. The testimony of one witness is sufficient to sustain a conviction so long as that witness had an adequate opportunity to observe the accused. (See, *e.g., People v. Brinkley* (1965), 33 Ill. 2d 403, 211 N.E.2d 730.) The function of the trier of fact is to determine the credibility of the witnesses and the weight to be given their testimony and its findings will be set aside only where the evidence is so improbable as to justify a reasonable doubt of the defendants' guilt. (*People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489; *People v. Catlett* (1971), 48 Ill. 2d 56, 268 N.E.2d 378.) The positive identification of defendants by Capps was sufficient to justify the jury's findings in this case.

For the reasons we have stated, the judgment of the trial court is affirmed as to each defendant.

Affirmed.

RECHENMACHER, P. J., and BOYLE, J., concur.