THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICHARD LEWIS, Defendant-Appellant.

Fifth District   No. 78-244

Opinion filed July 9, 1979.

W. Charles Grace, of Carbondale, for appellant.

Robert Howerton, State's Attorney, of Marion (Raymond F. Buckley, Jr., and William S. Zale, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

Defendant Richard Lewis was found guilty of armed robbery, robbery and theft by a jury in the circuit court of Williamson County and was sentenced to a term of imprisonment of not less than four nor more than 10 years for armed robbery. Defendant asserts the following issues on appeal: (1) whether the trial court erred in exercising jurisdiction over the defendant; (2) whether the trial court erred in instructing the jury to disregard any attempts at impeachment of the complaining witness by the use of prior inconsistent statements; (3) whether the trial court erred in not sustaining objections to certain questions asked by the prosecutor during his cross-examination; (4) whether the trial court erred in instructing the jury on accountability; (5) whether defendant was denied due process of law on the basis of the representation afforded him by his trial counsel; and (6) whether the evidence at trial was sufficient to establish defendant's guilt beyond a reasonable doubt.

Defendant was 16 years old at the time of the robbery; nevertheless through his retained counsel he made a motion pursuant to section 2—7(5) of the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 702—7(5)) seeking to waive juvenile jurisdiction and electing to have himself tried as an adult. This motion was granted by the trial court. No hearing was conducted on the motion, and defendant was not admonished by the court at the removal hearing as to the possible consequences of being tried as an adult. However, at a preliminary proceeding, defendant was informed by the trial judge that he would receive a minimum of four years in prison upon conviction of the armed robbery charge. The court added further that it could not grant probation.

At the trial of Richard Lewis and his co-defendant, the evidence

showed that on December 27, 1976, at approximately 9:30 p.m., the sole attendant on duty at the Owens Gas Station in Marion, Illinois, was forced at gunpoint to hand over some $81 in currency to two young men. The station attendant testified that he first observed defendant using a vending machine outside the station. Defendant returned minutes later and entered the station's office and asked the attendant to make change for a $20 bill. While the attendant was counting out single dollar bills, co-defendant entered the office wielding a shotgun. Both men demanded money and when the attendant asked whether they were kidding, co-defendant pointed the weapon at the attendant and asked whether they looked like they were kidding. The attendant then gave them $81. He testified that the entire incident lasted between five and 15 minutes, that the office was well lighted, and that he saw the faces of both men from a distance of about three feet.

From five photographs shown to him by police approximately a month after the robbery, the attendant identified defendant as the robber who asked for change. Prior to trial, according to defendant's investigator, the attendant could not identify defendant or co-defendant from a group of photographs shown to him by the investigator on three or four separate occasions. However, at both the preliminary hearing and the trial the attendant stated that he recognized defendant and co-defendant as the men who robbed him, although by the time of trial they had altered their hairstyles and appearances.

During cross-examination, counsel for co-defendant attempted to impeach the attendant's testimony by questioning him about prior inconsistent statements made to the Marion police and at the preliminary hearing with respect to the time of the robbery, the time the attendant's shift ended on the night of the robbery, the clothing worn by the robbers, the characteristics of the shotgun used and the age of the robbers. However, no evidence of the prior inconsistent statements was offered as a foundation for the attempted impeachment.

Defendant's alibi was that he was at co-defendant's home on the night of the robbery from 8:30 p.m. until 10:15 p.m. This alibi was corroborated by the testimony of co-defendant and his mother.

At the close of defendant's case and prior to closing arguments, the trial court instructed the jury to disregard the attempted impeachment of the attendant due to the failure of both defense counsel to lay a proper foundation for the attempted impeachment by failing to offer any evidence of the prior inconsistent statements.

During deliberation, the bailiff received a note from the jury which he gave to the trial judge. In the presence of the prosecutor and both defense counsel the trial judge read the note aloud which stated: "If found guilty of armed robbery do both persons have to be armed with a gun?"

The judge suggested that Illinois Pattern Jury Instructions, Criminal, No. 5.03 (1968) (hereinafter IPI) be submitted to the jury in answer to their question. Neither defense counsel objected to the jury receiving this accessoryship instruction nor did they object to having the bailiff hand the instruction to the jury foreman through the door of the jury room.

Initially, defendant contends that the trial court erred in exercising jurisdiction over him for the following reasons: (1) he did not personally participate in the decision to waive juvenile jurisdiction; (2) assuming arguendo that he did make the decision to waive juvenile jurisdiction, such decision was not made knowingly and intelligently; and (3) the trial court accepted the waiver without conducting a hearing to ascertain whether the waiver was made knowingly or intelligently.

■■ Section 2—7(5) of the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 702—7(5)) provides a mechanism whereby a juvenile, as a matter of right, can have a juvenile petition against him dismissed and elect to be tried as an adult for his actions. (*People v. Thomas* (1976), 34 Ill. App. 3d 1002, 341 N.E.2d 178.) This section states in part:

> "If a petition alleges commission by a minor 13 years of age or over of an act which constitutes a crime under the laws of this State, the minor, with the consent of his counsel, may, at any time before commencement of the adjudicatory hearing, file with the court a motion that criminal prosecution be ordered and that the petition be dismissed insofar as the act or acts involved in the criminal proceedings are concerned."

Defendant argues that the language, "the minor, with consent of counsel, may, * * * file * * * a motion," requires that the minor must personally waive juvenile jurisdiction before the waiver can be valid. Thus defendant contends that the record must reflect the fact that the juvenile personally made the decision to remove. Defendant notes that it was his counsel who, during the removal hearing, made the motion to waive juvenile jurisdiction. It is maintained by defendant that the record is devoid of any facts indicating that he personally made the decision to remove. Therefore, defendant concludes that not only did the record fail to establish that he personally made the removal decision, but it also demonstrated that the decision was made solely by his counsel, thereby rendering the waiver invalid.

■■ Although we agree that a juvenile should personally consent to any removal decision and that the record should reflect this consent, we cannot agree with defendant's argument that his counsel was solely responsible for the waiver.

■■■ Where the record reveals that a juvenile was present in court with his counsel, and his counsel made a motion to have the case removed from juvenile jurisdiction, the record is sufficient to support a finding

that the juvenile personally consented to the removal. Such consent is presumed unless the record shows facts to the contrary, such as evidence of protestation on the part of the juvenile or his parents when the motion to remove is made. The record in this case shows that the defendant was present in court when his counsel made the motion for removal. Moreover, neither defendant nor his mother, who was also present in court, voiced any objections to the court or to defendant's counsel about defendant being tried as an adult. Accordingly, on the basis of the record at the removal hearing, we hold that defendant personally consented to the removal.

This holding is further supported by testimony from defendant's father at the hearing on defendant's post-trial motion.

> "Q. Had it been agreed between you, your attorney and your son that they would waive juvenile jurisdiction?
>
> A. Well, my son willingly went along with whatever he thought best."

Next, defendant argues that even if he did consent to removal, such consent was invalid because it was not given knowingly and intelligently. Defendant claims at the time of the motion for removal his only understanding about the difference between juvenile and adult court was that he could have a jury in adult court but not in juvenile court. Defendant contends that his counsel did not inform him of the actual and potential consequences of his being convicted as an adult, specifically the fact that he would receive at least a minimum of four years in prison if convicted of armed robbery.

At a preliminary proceeding, which occurred a few weeks after the removal hearing and six months prior to trial, the following dialog occurred between the trial judge and defendant:

> "THE COURT: Now Armed Robbery, a person commits armed robbery when he violates section 18—1, in other words, the robbery section, while armed with a dangerous weapon. So is there any question about the law or the nature of the charge against you?
>
> DEFENDANT: No, your Honor.
>
> THE COURT: Alright now, under the law, any person who is found guilty of having violated this law there is a mandatory jail sentence required of not less than four years. The Court cannot grant probation. It must sentence the person to the Penitentiary for a term of at least four years. Now the Court could fix a higher minimum sentence than four years. It could be a ten, twenty or a hundred year minimum. * * * Is there any question about that?
>
> DEFENDANT: No, Sir."

The trial court went on to explain the difference in parole eligibility between an adult and a juvenile convicted of armed robbery.

"However under our law any person under seventeen, even though there might be a mandatory four year imprisonment, at least that much imprisonment ordered, that individual does become eligible for parole on the first day, I believe, of his sentence; whereas an adult, he doesn't become eligible until he has certain good time given to him and he serves his minimum term. In other words on an adult, I believe an adult can become eligible for parole in about two years whereas a juvenile becomes eligible for parole the first day."

Despite the court's rather explicit apprisal of the possible ramifications stemming from an armed robbery conviction, defendant made no effort to withdraw his petition for removal or to have the order remanding him to criminal jurisdiction vacated in the six months prior to trial. Nor was there any evidence in the record during this period to indicate or imply any dissatisfaction on defendant's part with his decision to be tried as an adult.

■■ We therefore find no merit to the contention that defendant's petition to remove was invalid due to his failure to decide upon this course of action knowingly and intelligently. Even if defendant was unaware of the consequences of a conviction if tried as an adult, his subsequent silence in the face of the trial court's detailed explanation of the possible sentences which could be meted out for armed robbery certainly connotes a knowing and intelligent ratification of the removal decision by defendant.

With regard to the jurisdictional question defendant finally asserts that before a juvenile, who petitions to be tried as an adult, can be subjected to criminal jurisdiction, a hearing must be conducted to ascertain whether the petition for removal was knowingly and intelligently consented to by the juvenile, and that in the instant case the trial court's failure to conduct a hearing resulted in an improper transfer of defendant to criminal court.

We need not further consider whether the absence of a hearing on the petition constituted error since the record adequately reflects, for the reasons stated above, that defendant knowingly and intelligently chose to be tried as an adult.

We therefore hold that the trial court properly exercised jurisdiction over defendant in his trial as an adult.

The second issue defendant raises is whether the trial court improperly instructed the jury to disregard any attempts at impeachment of the complaining witness through the use of prior inconsistent statements.

After defendant rested and prior to closing arguments, the trial judge orally gave the jury the following instruction:

"During the cross-examination of the witness, Vernon Williams,

during the People's Case, there were several attempts to impeach him, by that I mean to show that he had made prior inconsistent statements to the Marion Police and at a Preliminary Hearing. This, of course, * * * must be followed up and there must be evidence from witnesses, followed by a transcript from the Preliminary Hearing to show that he did make these prior, inconsistent statements. There was not any evidence produced by the defense to show that he made inconsistent statements to the police, to the Marion Police or * * * at the Preliminary Hearing; therefore, you are instructed to disregard any attempts at impeachment as to the Marion Police, prior inconsistent statements made to them or as to anything concerning the Preliminary Hearing."

Relying on *People v. Santucci* (1962), 24 Ill. 2d 93, 180 N.E.2d 491, defendant argues that the trial judge invaded the province of the jury by pointing out weaknesses in defendant's case. We disagree.

■■ The instruction to disregard defense attempts to impeach the victim by prior inconsistent statements correctly states the law and was properly given. While it is proper to ask a witness if he made a prior inconsistent statement, if he denies having done so, it is incumbent upon the cross-examiner to offer evidence that such statement was, in fact, made. (*People v. Moore* (1973), 54 Ill. 2d 33, 294 N.E.2d 297.) In the instant case the station attendant, Williams, generally denied making the prior inconsistent statements attributed to him by defense counsel during cross-examination. When counsel failed to follow up with proof of these prior inconsistent statements, it was necessary for the trial court to inform the jury to disregard the unconsummated attempts at impeachment.

The facts in this case are distinguishable from the facts in *People v. Santucci*. In that case, the trial judge interrogated each and every witness and at times emphasized through reiteration testimony pointing to guilt. No such witness interrogation occurred in the present case and the instruction was made in general terms without emphasizing specific testimony.

Citing *People v. Crane* (1976), 34 Ill. App. 3d 850, 341 N.E.2d 97, defendant also argues that the timing of the instruction served to enhance the credibility of the attendant.

We find this case unpersuasive as well. In *Crane*, following a lengthy and possibly effective impeachment by defense counsel, the trial judge inquired of the witness whether he understood the penalties of perjury and whether he had answered truthfully and correctly. The witness responded affirmatively. On review, the court could not say as a matter of law that the remarks, coming as they did immediately after the attempted impeachment, did not substantially prejudice the jury. In the case at bar, however, the instruction to disregard the impeachment attempts did not

issue until the end of trial. We cannot say that the timing of this instruction *contributed* to any jury prejudice.

The third issue for consideration is whether the trial court erred in overruling objections to certain questions asked by the prosecutor during cross-examination of co-defendant. Defendant maintains that since his alibi defense was dependent upon co-defendant's credibility, the attempts by the prosecutor to humiliate or harass co-defendant, and thereby weaken his credibility, substantially prejudiced defendant. Defendant therefore submits that the trial court erred in sustaining objections to such prosecutorial attempts at harassment.

■■ The first attempt centers around repeated questioning of co-defendant about his movements on September 8, 1977, a month before trial. Contrary to contentions in defendant's brief, no objection was raised at trial by either defense counsel to such questioning. Any error attendant to this line of questioning is therefore waived.

■■ ■ Next, counsel for co-defendant objected to the prosecutor's inquiries as to co-defendant's activities on December 30, 1976, three days after the robbery. The objection was on harassment grounds and was overruled. Defendant could not recall his movements that day, and no further questions about that day were asked. Although this line of questioning was designed to shake co-defendant's credibility, we cannot say as a matter of law that the trial court abused its discretion in overruling the objection in view of the close proximity of the day in question to the night of the robbery. It is only where there is a clear abuse of discretion, resulting in substantial prejudice to the defendant, that a court of review will interfere. *People v. Nugara* (1968), 39 Ill. 2d 482, 236 N.E.2d 693.

Another incident of harassment alleged by defendant concerned repeated questions put to co-defendant about whether he spoke with defendant on January 24, 1977, a day after co-defendant was questioned by police concerning his possible involvement in the robbery. Again, since no objections were interposed by either defense counsel concerning this line of questioning, we need not consider it here.

■■ The last incident involved repeated questioning of co-defendant about whether he talked with defendant about whether they were together on December 27, 1976. Since the crime occurred on this date, the questioning was highly probative in light of the existence of alibi defenses. Therefore the objection on relevancy grounds was properly overruled.

The next issue on appeal is whether the trial court erred in instructing the jury on accountability.

While deliberating, the jury foreman handed a note to the bailiff which was relayed to the trial judge. The judge read the note in his chambers to both defense counsel and the prosecutor. The note stated: "If

found guilty of armed robbery do both persons have to be armed with a gun?" The trial judge decided to answer this question by submitting to the jury IPI Criminal No. 5.03 which read as follows:

"A person is responsible for the conduct of another person when, either before or during the commission of a crime, and with the intent to promote or facilitate the commission of a crime, he knowingly solicits, aids, abets, agrees or attempts to aid the other person in the planning or commission of the crime."

Neither defense counsel objected to this instruction. The judge proposed that the bailiff hand the written instruction to the foreman of the jury through the jury room door. Defense counsel did not object to the method of instruction either.

Defendant argues that the accountability instruction was improper since the question posed by the jury was, according to him, a question of fact, not law. Therefore, the judge's attempt at answering this question through the accountability instruction usurped the fact finding duty of the jury.

■■ We need not consider the merits of this argument for the reason that the failure of defendant's counsel to object to this instruction below precludes defendant from raising the issue in this court.

■■ Defendant also contends that the method employed by the court in communicating the accessoryship instruction to the jury constituted reversible error. He maintains that any communication to the jury should have occurred in open court in the presence of the jury. Again, failure by defense counsel to object to the method of communicating to the jury waives any errors surrounding such communication. *People v. Smith* (1978), 67 Ill. App. 3d 952, 385 N.E.2d 707.

The fifth issue is whether defendant was denied due process of law due to the incompetency of trial counsel.

Defendant's counsel at trial was privately retained. The test for ineffective representation of counsel our supreme court applies to privately retained counsel is whether the representation afforded was of such low caliber as to have amounted to no representation at all or which reduced the proceedings to a farce or a sham. *People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677.

The first example of incompetency cited by defendant is his counsel's alleged failure to fully apprise him of the consequences of being tried as an adult, particularly the fact that defendant would receive a minimum of four years in prison upon a conviction for armed robbery.

■■ Even if we ignore the evidence in the record at the post-trial hearing which indicates that defendant and his parents conferred with defense counsel with respect to having the defendant tried as an adult, and assume that defendant was not fully informed by his counsel about the various consequences of an armed robbery conviction, we cannot say defendant

has been harmed. Less than three weeks after the removal hearing defendant received in a pretrial proceeding a detailed explanation of the various alternatives available to the court in sentencing on an armed robbery conviction. The court specifically informed defendant that the minimum sentence would be four years in prison and that probation could not be granted. Despite being armed with this knowledge for at least six months prior to trial, defendant made no attempt to vacate the removal order or withdraw his transfer petition. Therefore defendant cannot be heard to complain that this decision to be tried as an adult was solely influenced by the uninformed advice of his counsel and that he was harmed thereby.

The next example of incompetency is defense counsel's failure to follow up numerous impeachment attempts against the station attendant with evidence of prior inconsistent statements, and defendant contends that under *People v. Jackson* (1968), 96 Ill. App. 2d 99, 238 N.E.2d 234, this failure constituted incompetency *per se*. Defendant points out that his counsel did not have a transcript of the preliminary hearing prepared, even though several impeachment attempts were based on the attendant's testimony at that hearing. Nor were certain police officers called to the stand to support impeachment attempts utilizing statements of the attendant made to those officers.

We find *People v. Jackson* distinguishable from the instant case. In *Jackson*, defense counsel was court appointed, whereas in this case defense counsel was privately retained. A stricter test is applied when determining the incompetency of private counsel. (*People v. Murphy.*) Furthermore, the failure to follow up an attempted impeachment was not an isolated example of incompetency in *Jackson*, but rather, it was part of a pattern of omissions contributing to substandard representation. Among other things, defense counsel failed to request a copy of police reports or a witness list, failed to make an entrapment defense, on four occasions allowed hearsay testimony to come in without objection, and allowed the prosecutor to lead witnesses on nine occasions. Aside from the failure to follow up, the other omissions mentioned in *Jackson* were not present in this case.

■■ While defendant speaks of failure to follow up in general, no specific instances are brought to our attention in which the attendant's testimony could have been weakened by a proper follow-up on the attempted impeachment. The various impeachment attempts went toward attacking the attendant's version of the timing of the robbery, the time he got off work, the clothing of the robbers and the characteristics of the shotgun used in the robbery; yet, the identification of the robbers at trial and at the preliminary hearing was based on the eyewitness observation of the

attendant in a well lighted station from a distance of approximately three feet during a span of between five and 15 minutes. Although it would have been prudent for defendant's counsel to secure a transcript of the preliminary hearing and call the police officers to the stand, we cannot say that such omissions denied defendant due process of law.

We find no merit to defendant's next contention that his counsel's failure to move for a directed verdict constituted incompetency.

Finally defendant argues that it was incompetency on his counsel's part not to object to the wording of the impeachment instruction and the giving of the accountability instruction. We find no merit with this last argument either.

■■ The wording of the impeachment instruction was of a neutral, general quality which did not stress or highlight specific testimony. The accessoryship instruction was properly given by the court. Since any objection would have properly been overruled by the trial court, the failure to make the objections certainly could not have prejudiced defendant.

For the reasons stated above, we hold that the level of representation afforded defendant did not reduce the trial to a farce or a sham and that he was not deprived of due process of law.

The last issue defendant raises is whether evidence at trial was sufficient to establish his guilt beyond a reasonable doubt.

■■ The testimony of a single identification witness is sufficient to sustain a jury verdict in a criminal case, despite an alibi defense. (*People v. Guido* (1962), 25 Ill. 2d 204, 184 N.E.2d 858.) "While the evidence of alibi cannot be disregarded where the sole and only evidence contradicting it rests upon the identity of the defendant as the man who committed the crime, it is equally true that the testimony of a single witness, if it is positive and the witness credible, is sufficient to convict even though it is contradicted by the accused. [Citation.]" *People v. Ellis* (1974), 24 Ill. App. 3d 870, 882, 321 N.E.2d 722, 730; *People v. Irons* (1974), 20 Ill. App. 3d 125, 312 N.E.2d 664.

Defendant was consistently identified by the attendant at trial, at the preliminary hearing and from a group of five photographs. Although on cross-examination the attendant became a little confused as to the exact minute of the robbery and which robber wore what clothes, he never waivered in his identification of defendant. The record indicates that the conditions for observing the robbers were good. The station was well lit, the robbers were only three feet away and the attendant observed them between five and 15 minutes. Defendant produced no evidence at trial which could have had an effect on the attendant's observation of the robbers other than an admission by the attendant that he was a little

nervous. Defendant instead offered an alibi defense to the effect that he was at co-defendant's home watching television at the time of the robbery.

As to the sufficiency of the identification, we find *People v. Wolf* (1977), 48 Ill. App. 3d 736, 363 N.E.2d 402, to be controlling. In *Wolf*, a case involving the robbery of a service station, the sole attendant and principal witness observed the robbers at close range for several minutes. Defendant was identified from photographs shown to the attendant almost two months after the robbery. The attendant also recognized defendant at subsequent court appearances. In upholding the conviction the court held that the witness had adequate opportunity to observe the robber. In the case at bar, defendant offered no evidence which challenged the attendant's ability to observe the robbers.

■■ "A court of review will not reverse their [the jury's] finding unless it is palpably contrary to the weight of the evidence or so unsatisfactory as to raise a reasonable doubt of guilt. [Citation.]" (*People v. Stepney* (1977), 46 Ill. App. 3d 328, 330, 360 N.E.2d 1206, 1208.) When confronted with evidence of an eyewitness identification, the jury is not obliged to believe a defendant's alibi witness. *People v. Irons.*

After reviewing the record, we find no basis for disturbing the verdict and judgment of the trial court.

Affirmed.

KUNCE and KASSERMAN, JJ., concur.