THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GREGORY McCOY, a/k/a Johnny B. Lathvon, a/k/a John Lathon, Defendant-Appellant.

First District (4th Division)    No. 78-203

Opinion filed October 25, 1979.

Ralph Ruebner and Susan Bandes, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and James S. Veldman, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County the defendant, Gregory McCoy, was found guilty of burglary and sentenced to a term of three to nine years in the penitentiary. On appeal, the defendant argues the court erred in denying his motion to suppress identification testimony and by allowing a State rebuttal witness to testify to what it terms evidence of a prior crime.

The defendant moved to suppress any reference to the pretrial identifications and any in-court identification, arguing that the pretrial procedures were impermissibly suggestive and thereby resulted in a denial of his due process rights. At the hearing on the motion the complainant testified that on September 21, 1976, she and her roommate went to a friend's apartment for dinner. The friend and the complainant lived in the same building in the city of Evanston. The complainant returned to her own apartment about 6:45 p.m. to make a telephone call and to use the bathroom. The bathroom was at the end of a hall. As she sat on the toilet with the bathroom door open, she saw a man come around the corner in the hallway of her apartment. He stood facing her about six feet away. She was not frightened at first because she assumed she knew the person. She looked at him very hard, for approximately two to five seconds, "thinking that it was perhaps a friend of a friend." The lighting was good in the hallway because both the bedroom and bathroom lights were on. On the day of the burglary she described the burglar to the police as a black male, in his late teens or early twenties with a beard that was "difficult to describe," and wearing a light colored pair of slacks, short jacket and hat.

The complainant also testified that she viewed a lineup at the Evanston police station on October 10, 1976. She did not know any of the lineup participants but thought she had seen one of them earlier in a uniform. She identified the defendant as the person who had burglarized her apartment. At the time of the lineup she did not realize that the person she selected was the same one pictured in the photograph which had been shown her previously by Evanston police officer Douglas Glanz. The complainant said she viewed the lineup for 10 minutes or longer. After looking at the lineup the first time she went out to the hall with a police officer and said she thought the defendant was the burglar but that she wanted to be positive. She then viewed the lineup again. She noticed the defendant's suede shoes which were different from those worn by the other lineup members. She did not notice whether the defendant was wearing shoelaces, socks or a belt. His pants covered the top of his shoes and he was wearing a baggy sweater which covered his belt area.

Police Officer Glanz testified that he spoke to the complainant on September 23, 1976, at her apartment. Glanz showed her a tray of mug shots. The complainant was unable to identify any of the men pictured, and Glanz then showed her a single photograph from among those she had already viewed and asked "How about this one?" It was a picture of the defendant. The complainant responded "I really couldn't say for sure unless I saw the individual in person." The picture had been taken four years earlier. The photo, which was introduced into evidence, showed a

man without a beard. Glanz did not tell the complainant that one of the pictures was a suspect or the suspect's name.

The defendant testified that he was put in a lineup at the Evanston police station on October 10, 1976, with three other people. He was the only one with a beard in the lineup and he was wearing shoes different from the others. He was the only one not wearing a belt, socks or shoelaces. The lineup lasted 25 minutes and he was asked to step forward eight times. During the lineup he engaged in a "name calling match" with the other lineup participants who were making fun of his braided hair style.

At the close of the testimony at the suppression hearing, the court heard extensive arguments from both counsel. The defense argued the evidence had to be clear and convincing in showing that there was an independent basis for the identification. The court denied the motion to suppress.

At trial, the complainant's roommate testified that on the day of the burglary she and the complainant went to another apartment in their building for dinner. The complainant left for a while, returned to talk to her roommate, and then the two women went to their own apartment together. The roommate found $20 was missing from her wallet on the bed.

The complainant's testimony at trial was essentially the same as at the hearing on the motion to suppress. She added some details concerning the photo display and lineup. She said that a few days after the burglary she looked at a series of photographs but could not identify one. Several days later Glanz showed her more pictures. Again she could not identify the burglar. Glanz pointed out one of the pictures and asked if that was the person. The complainant told him she did not know and could not say without seeing him in person. She also said the lineup participants consisted of four black males, all about the same height and all between the ages of 20 and 30. The picture of the man which Glanz showed her and the present appearance of the defendant were different. The man in the picture did not have a beard. At the lineup she did not identify the defendant solely by his beard. The complainant said she had no doubts of the accuracy of her identification.

The defendant's sister, mother, and estranged wife testified for him. They said the defendant was at his sister's house at 4016 West Jackson, in the city of Chicago, from 4 p.m. until 7:30 or 8 p.m. on the day of the burglary. The estranged wife said the defendant was at her house at 3850 West Adams in Chicago earlier that day, perhaps around 3 p.m.

The State then sought to introduce a rebuttal witness. The defense objected, saying it had only heard about the testimony a few moments

before and that the proposed testimony was prejudicial to his client. The court overruled the objections.

Officer Michael Shep, an Evanston police officer, testified that on the day of the robbery, at 3:22 p.m. he arrived at the 600 block of Haven in Evanston in response to a "suspicious person" call and observed the defendant standing in the alley.

■■ On appeal, the defendant's first argument is that the trial court erred in denying his motion to suppress testimony concerning the pretrial and in-court identifications. In *Manson v. Brathwaite* (1977), 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243, the Supreme Court discussed suggestive identification procedures. The court, citing *Neil v. Biggers* (1972), 409 U.S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375, defined the issue as whether, under the totality of the circumstances, the identification was reliable even though the confrontation procedure was suggestive. In applying the test, the court must determine whether there was "no substantial likelihood of misidentification." *Neil v. Biggers* (1972), 409 U.S. 188, 201, 34 L. Ed. 2d 401, 412, 93 S. Ct. 375, 383.

■■ The factors to be considered in determining whether the identification was reliable are (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the prior description; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. (*Neil v. Biggers* (1972), 409 U.S. 188, 199-200, 34 L. Ed. 2d 401, 411, 93 S. Ct. 375, 382.) Against these factors the court must weigh the corrupting effect of the suggestive identification itself. *Manson*, 432 U.S. 98, 114, 53 L. Ed. 2d 140, 154, 97 S. Ct. 2243, 2253.

"[E]vidence of an unnecessarily suggestive identification may nevertheless be admitted at trial if reliability of the identification, under the totality of circumstances, is shown." *People v. Manion* (1977), 67 Ill. 2d 564, 571, 367 N.E.2d 1313, 1317.

■ The procedure of showing the witness a single photograph accompanied by the statement "How about this one?" is impermissibly suggestive. (See *Manson; Simmons v. United States* (1968), 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967.) We must decide whether the pretrial identifications were reliable even though the photo display was suggestive. The first *Biggers'* factors are the complainant's opportunity to view the defendant and her degree of attention at the time of the crime. The complainant testified that she was sitting on the toilet with the bathroom door open when the defendant appeared in the hallway approximately six feet away from her. The lighting in the hallway was good and the complainant testified that she "looked very hard" at the defendant for two to five seconds before slamming the bathroom door.

The next factor is the accuracy of the prior description. At the suppression hearing the complainant testified that on the day of the burglary she described the burglar as a black male, in his late teens or early twenties, that he had a beard which was difficult to describe and was wearing light colored slacks, a short jacket and hat. Officer Glanz was not asked whether the complainant gave him a description of the burglar on the day of the crime. The clothing description given by the complainant is insignificant because the lineup and trial took place sometime after the crime and it thus cannot be verified or contradicted. However, the complainant's description, insofar as it pertained to the defendant's physical appearance, was not contradicted at the suppression hearing or at trial.

The next factor is the level of certainty demonstrated at the confrontation. The complainant testified that she had no doubts of her identification; that at the lineup she did not identify the defendant solely by his beard; and that she did not realize the person identified at the lineup was the person in the photo.

The final factor to be considered is the time between the crime and the confrontation. The burglary occurred on September 21, 1976. The photo displays took place within a matter of days thereafter. The lineup occurred approximately 2½ weeks later on October 10, 1976.

■■ ■ At the hearing on the motion to suppress, the trial judge's function was to weigh these factors against the "corrupting effect" of the suggestive identification. This determination involved questions of fact and assessments of the witnesses' credibility. The trial judge's resolution of this issue will not be reversed on appeal unless the evidence is so unsatisfactory, unreasonable or improbable as to raise a reasonable doubt of the defendant's guilt. (*People v. Jones* (1975), 60 Ill. 2d 300, 325 N.E.2d 601; *People v. Chapman* (1977), 49 Ill. App. 3d 553, 364 N.E.2d 577.) In light of the facts that the improperly singled-out photo was four years old and pictured the defendant without a beard, the complainant was unable to identify the defendant from the photo, and the complainant testified that she did not realize the person identified at the lineup was the same as the one pictured in the photo, we believe the trial court's denial of the motion to suppress was supported by the evidence.

The defendant also argues the trial court erred by permitting the State to present a rebuttal witness to testify that he saw the defendant earlier on the day of the burglary when responding to a "suspicious person" call. The defendant claims this testimony accomplished the improper purpose of placing evidence of a prior crime before the jury.

The defendant's estranged wife testified that he was at her house on the west side of Chicago at around 3 p.m. on the day of the burglary. Shep's testimony that the defendant was in Evanston at 3:22 p.m. the

same day is certainly impeaching evidence by way of contradiction. (See McCormick, Evidence §47, at 97-98, (2d ed. 1972).) The defendant's argument concerning evidence of another crime is based on Shep's statement that he was responding to a "suspicious person" call. We have considerable doubt as to whether this constitutes evidence of another crime. Assuming, however, as both parties have, that this testimony did in fact amount to evidence of another crime, we believe that the portion of Shep's testimony which included the fact that he was responding to a "suspicious person" call was improper.

The general rule is that evidence of the commission of another crime by the accused is inadmissible. (*People v. Wilson* (1970), 46 Ill. 2d 376, 263 N.E.2d 856.) However, evidence of other offenses is admissible if relevant for any purpose other than to show a criminal propensity. *People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489.

In *People v. Cordes* (1945), 391 Ill. 47, 62 N.E.2d 465, the defendant presented an alibi defense. In rebuttal, the State presented a witness who identified the defendant as the person she saw in a certain area at a certain time and thus contradicted the alibi. On appeal, the court found that the witness' further testimony concerning the defendant's vulgar remarks and indecent exposure should not have been admitted. Similarly, in *People v. Fuerback* (1966), 66 Ill. App. 2d 452, 214 N.E.2d 330, the defendant offered an alibi in an armed robbery case. In rebuttal, the State introduced evidence that the defendant committed a robbery at a grocery store an hour after the time of the robbery for which he was on trial. The court found that to be error. The court stated that evidence that the defendant was in a grocery store at that time was proper as contradiction of the alibi defense. However, the testimony at trial was not so limited and thus constituted error because it unnecessarily presented evidence of the defendant's alleged participation in a separate and distinct crime.

■■ We believe that the admission of Shep's testimony insofar as it mentioned the suspicious person call was error. However, the error here does not approach the level of prejudice apparent in *Cordes* and *Fuerback* where the defendants' convictions were reversed on appeal. The improper evidence in those cases clearly concerned "another crime" unlike the suspicious person call which was objected to here. We conclude the admission of Shep's testimony was harmless error. *People v. Gant* (1974), 58 Ill. 2d 178, 317 N.E.2d 564.

For the foregoing reasons the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

JOHNSON and LINN, JJ., concur.