THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* TIMOTHY H. SON, Defendant-Appellant.

Second District   No. 81—341

Opinion filed December 22, 1982.

G. Joseph Weller and Paul J. Glaser, both of State Appellate Defender's Office, of Elgin, and Douglas Drenk and Robert L. Thompson, both of Konewko, Drenk & Thompson, Ltd., of Wheaton, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Barbara Preiner, Assistant State's Attorney, and Phyllis J. Perko, of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, Timothy H. Son, was charged by information with armed robbery and armed violence. In a bench trial, he was found guilty of both offenses and sentenced to seven years' imprisonment on the armed robbery charge. On appeal, defendant raises the following issues: (1) whether certain pretrial identification procedures were unduly suggestive; (2) whether the State failed to show by clear and convincing evidence that an independent basis existed for his in-court identification; (3) whether the trial court abused its discretion when it struck without an evidentiary hearing defendant's post-trial motion for a new trial based upon newly discovered evidence; (4) whether defendant was denied effective assistance of counsel; (5) whether the judgment of conviction entered for armed violence must be vacated; (6) whether the defendant was proved guilty beyond a reasonable doubt; and (7) whether cumulative error denied defendant a fair trial.

On June 28, 1979, at approximately 10:30 p.m. a man of oriental extraction entered the Taco Bell restaurant in Downers Grove, Illinois, approached the cash register, and requested that the cashier, Sherry Jones, give him change for a dollar. When Jones opened the register, the man drew a gun and demanded all the money. Jones backed away, and the man reached into the register, took money, and fled. A co-worker, Rebecca Fitzgerald, the only other person in the restaurant at the time, witnessed the robbery. The two witnesses each subsequently assisted the police in putting together composite drawings of the robber. Sherry Jones did not view any photographs until several days before trial at which time she identified the defendant from six photographs shown to her. She was told that Rebecca Fitzgerald previously had identified the defendant's photograph from

those shown her although Jones was not told which photograph was that of the defendant. Rebecca Fitzgerald viewed various photographs the evening of the armed robbery but was unable to make any identification. On August 30, 1979, Fitzgerald went to the Downers Grove police station, viewed various photographs, and picked out a photograph of the defendant whom she identified as the robber. An arrest warrant was issued for defendant on September 21, 1979, and he was subsequently arrested on December 11, 1979. He was released on bond on December 28, 1979.

Jones and Fitzgerald were the only witnesses who testified at trial for the State. Sherry Jones testified that she viewed the robber for about 1½ minutes at a distance of several feet; that she had no difficulty in observing the robber's facial features; that the robber had a bandana across the top of his head and wore sunglasses; that defendant was the robber; and that her in-court identification of defendant was based upon her view of him on the night of the crime. During her cross-examination, defense counsel was furnished the six photographs from which Jones had selected defendant's photograph several days before trial.

Rebecca Fitzgerald testified that she observed the robber from the time he walked into the restaurant; that she stood right next to Jones facing the robber during the crime; that nothing obstructed her view and that there were lights right above where the robber was standing; that she thought the whole occurrence took 10 to 12 seconds, but it could be shorter or longer; that she could observe the robber's complexion, the shape of his eyes and cheekbones, and some of his hair; and she was positive of her identification in court of the defendant.

At the conclusion of the State's case, the trial court denied a motion to strike all the testimony on the basis of the pretrial identification procedures. The defendant then testified he did not commit the armed robbery. He further testified that on the day of trial an assistant State's Attorney approached him, and, in the presence of Jones and Fitzgerald, asked if he was Tim or his brother. On redirect examination, he testified that he had been arrested "a couple of times" for things his brother had done.

Two assistant State's Attorneys testified in rebuttal that they had approached defendant in the hall on the day of trial and spoke to him briefly about whether he was Tim or his brother, but denied the two witnesses were present at that time.

On June 17, 1980, at the conclusion of trial, the court found the defendant guilty of both armed robbery and armed violence. New pri-

vately retained counsel, substituted for defendant's privately retained trial counsel on August 14, 1980, then filed a motion for new trial claiming newly discovered evidence. Attached to the motion was a copy of a transcript of a statement given to a court reporter under oath by defendant's brother which, in substance, related that he had committed the robbery at the Taco Bell restaurant on the evening in question. The State thereafter moved to strike the motion for new trial and contended that the motion for new trial failed to include an affidavit setting forth a statement of the defendant's due diligence in attempting to discover all evidence favorable to his defense prior to trial. After hearing oral arguments on the motion to strike, the trial court granted the motion to strike. A later motion for post-trial relief filed by defendant setting forth various allegations of trial error was denied. After a sentencing hearing, defendant was sentenced to seven years' imprisonment.

Defendant first contends that the State's failure to "turn over" composite drawings and photographs used in several pretrial photographic showups, and failure to provide notice of a photographic lineup held several days before trial, violated his right to discovery. While no discovery motion was made by the defendant, the court entered a form discovery order on its own which required, *inter alia*, that the State disclose to defendant's attorney all matters as required by sections (a), (b), and (c), of Supreme Court Rule 412 (87 Ill. 2d R. 412), and provide copies of those materials that lend themselves to copying, and as to other materials, permit the defense to make an examination or photograph thereof. The State filed a document entitled "Disclosure to the Accused" which recited, in part, that "[a]ll physical exhibits are in the custody of the Downers Grove Police Department. They may be viewed by appointment at a mutually convenient time." The supplemental record includes a police report which makes reference to two photographic lineups and the identification of defendant by a witness, Rebecca Fitzgerald.

Supreme Court Rule 412(a)(v) (87 Ill. 2d R. 412(a)(v)) provides for disclosure of "any books, papers, documents, photographs or tangible objects which the prosecuting attorney intends to use in the hearing or trial or which were obtained from or belong to the accused." The composite drawings and photographs used in the various photographic lineups were not used by the State at trial, nor were they obtained from, nor did they belong to, the defendant. Unless photographs are favorable to the defense, they are not automatically discoverable by the defendant unless the prosecution intends to use them at trial or unless they were obtained from, or belonged to, defendant. (*People v.*

*Newbury* (1972), 53 Ill. 2d 228, 238, 290 N.E.2d 592; *People v. Sakalas* (1980), 85 Ill. App. 3d 59, 70-71, 405 N.E.2d 1121; *People v. Molsby* (1978), 66 Ill. App. 3d 647, 655, 383 N.E.2d 1336.) Moreover, there is no indication in this record of evidence not disclosed which is favorable to the defendant, such as a misidentification, or an inability to make an identification when shown photographs which include that of the defendant. (See *People v. Elston* (1977), 46 Ill. App. 3d 103, 360 N.E.2d 518.) Thus, under the discovery order here which required only disclosure in conformance with Rule 412(a)(v), we reject defendant's contention that there was a discovery violation by the State's failure to "turn over" photographs used in the various lineups and any composite drawings of defendant as they were not used at trial or obtained from or belong to the defendant.

■ Defendant also maintains that the State's failure to provide defendant with this pretrial identification information and the failure to notify defendant of the photographic lineup conducted a few days before trial resulted in surprise, unfairness and his inadequate preparation which deprived him of due process and the right to a fair trial. Insofar as this argument relates to any discovery violation, it is rejected. The State complied with the discovery order and defendant does not cite us to any rule violation other than that previously contended relating to the State's duty to "turn over" this material, which we rejected above. In fact, we note that the State did answer in its discovery disclosure that all physical exhibits may be viewed by appointment, thereby affording defendant a further opportunity to view the photographs and composite drawings even though not required under the rule since they were not used in trial. It was defendant's obligation to pursue additional discovery, if necessary, or follow up on the State's disclosure provided to him. Nor do the discovery rules require notice to the defendant of a photographic lineup. Accordingly, we find the State complied with all discovery as required under the rule and as ordered in the trial court's discovery order. Nothing the State did denied the defendant the opportunity for a pretrial hearing on the question of the identification procedures. During the trial, the defendant was given adequate opportunity to cross-examine the State's witnesses on out-of-court identification procedures and, in fact, this was done. We find no merit to this argument.

■ Defendant next maintains that shortly before trial began, while he was waiting in the hallway outside the courtroom, the prosecutor approached him and in the presence of the two witnesses, Fitzgerald and Jones, asked him if he was Timothy Son. He asserts this resulted in an impermissible one-man showup. Two assistant

State's Attorneys, however, testified that although this conversation with the defendant occurred, the witnesses were not present at that time. The trial court, at the time it found defendant guilty, specifically found that the defendant's testimony was not believable and accepted the two prosecutors' version of that occurrence. In a bench trial, it is the province of the trial court to determine the credibility and weight of the testimony, to resolve inconsistencies and conflicts therein, and to render its decision accordingly. The trial court, unlike the reviewing court, was in a position to observe the witnesses. (*People v. Berland* (1978), 74 Ill. 2d 286, 305-06, 385 N.E.2d 649; *People v. McCoy* (1979), 78 Ill. App. 3d 157, 162, 397 N.E.2d 79.) We find no basis to disturb the findings of the trial court on this issue, and we reject defendant's argument.

■ In addition, defendant contends that the witness, Sherry Jones, remained in the courtroom after all witnesses had been excluded, thus allowing her to view the defendant when he approached the bench after the case was called for trial. While the record does indicate that Jones admitted viewing the defendant approach the bench when the case was called, it also reveals that the motion to exclude witnesses was not made until a short while after the case was announced. From our examination of the record, Jones' presence in the court at the start of trial does not indicate an intentional design by the State to have a showup. Rather, she was simply present to testify, and subsequently did testify as the State's first witness. (See *People v. Wolf* (1977), 48 Ill. App. 3d 736, 740, 363 N.E.2d 402.) The State has no duty to conceal a defendant from all potential witnesses throughout all preliminary hearings preceding an actual trial (*People v. Martin* (1970), 47 Ill. 2d 331, 338, 265 N.E.2d 685), nor should one be self-imposed at trial.

■ The defendant also contends that a photographic showup approximately one year after the crime and several days before trial at which the prosecutor handed the witness, Sherry Jones, six photographs and advised her that Rebecca Fitzgerald had already identified one of the pictures as that of the robber was improper and impermissibly suggestive. While showing a defendant's photograph just prior to trial to a witness who has never made an identification of a defendant has been condemned (*People v. Martin* (1970), 47 Ill. 2d 331, 338, 265 N.E.2d 685, *People v. Freeman* (1978), 60 Ill. App. 3d 794, 802, 377 N.E.2d 107, *aff'd* (1979), 79 Ill. 2d 147, 402 N.E.2d 157), the "highly suggestive" procedure employed in *Martin* and *Freeman* was the showing of a defendant's photo alone. Here, the witness was shown six photographs, and there is no challenge on this appeal that

the photographs themselves were suggestive. Moreover, while it is preferable that the witness not be told that a suspect is included in a particular photoarray, that will not taint an otherwise fair identification procedure. (*People v. Harrell* (1982), 104 Ill. App. 3d 138, 146, 432 N.E.2d 1163.) The fact that a witness is told that a suspect was included in the lineup may be a statement of the obvious. (*People v. Young* (1981), 97 Ill. App. 3d 319, 323-24, 422 N.E.2d 1158; *People v. Carlton* (1979), 78 Ill. App. 3d 1098, 1104, 398 N.E.2d 107.) We do not find the procedure complained of here unduly suggestive.

■ However, even assuming the procedure employed to obtain Jones' identification of defendant was impermissibly and unnecessarily suggestive, this does not automatically mean that her in-court identification of defendant must be set aside. (*People v. Canity* (1981), 100 Ill. App. 3d 135, 146, 426 N.E.2d 591.) While it is the defendant's burden to establish that the pretrial confrontation was impermissibly suggestive, once accomplished, the State may nevertheless overcome that obstacle, by a clear and convincing showing, based on the totality of the surrounding circumstances, that the witness is identifying the defendant solely on the basis of his memory of events at the time of the crime. (*People v. McTush* (1980), 81 Ill. 2d 513, 520, 410 N.E.2d 861.) We may determine this from an examination of the record. (*People v. McTush; People v. Allender* (1977), 69 Ill. 2d 38, 43-44, 370 N.E.2d 509.) As stated in *Manson v. Brathwaite* (1977), 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243, reliability is the linchpin in determining the admissibility of identification testimony. (432 U.S. 98, 114, 53 L. Ed. 2d 140, 154, 97 S. Ct. 2243, 2253.) The factors to be considered are set forth in *People v. McTush*:

> "The factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. (*Neil v. Biggers* (1972), 409 U.S. 188, 199, 34 L. Ed. 2d 401, 411, 93 S. Ct. 375, 382; see *People v. Manion* (1977), 67 Ill. 2d 564, 571.) This court has added another factor in determining whether a witness' identification has an independent origin: 'any acquaintance with the suspect prior to the crime.' *People v. Blumenshine* (1969), 42 Ill. 2d 508, 514." (81 Ill. 2d 513, 521, 410 N.E.2d 861.)

Each case must be examined in light of the facts in the record.

Sherry Jones viewed defendant at the time of the crime under

good lighting conditions from a distance of approximately three to four feet; her view was not obstructed; she had no difficulty in describing his features; and she was attentive during the 1½ minutes she saw the defendant. She testified that her in-court identification was based on her view of the defendant on the date of the crime. The trial court specifically found both witnesses alert, articulate and credible and their identification of defendant very persuasive and reliable. It further found their identification of defendant not to be tainted by any out-of-court identification. We conclude that applying the factors set forth in *McTush*, the reliability of Sherry Jones' identification testimony was established sufficiently to allow it into evidence. While the testimony of Rebecca Fitzgerald was also reliable under these factors, this finding is unnecessary as defendant has demonstrated nothing "unduly suggestive" about the procedures used in her out-of-court identification of defendant.

■■ ■ Defendant has also challenged his conviction on the basis that the sole evidence against him was the eyewitness testimony of Jones and Fitzgerald which, he asserts, is insufficient to establish his guilt beyond a reasonable doubt. The testimony of a single occurrence witness is sufficient to support a conviction even though such testimony is contradicted by the accused, provided the witness is credible and he viewed the accused under such circumstances as would permit a positive identification to be made. (*People v. Stringer* (1972), 52 Ill. 2d 564, 569, 289 N.E.2d 631.) In a bench trial, the credibility of witnesses and the weight to be afforded their testimony is determined by the trial court, whose judgment will not be set aside unless the proof is so unsatisfactory as to create a reasonable doubt of guilt. *People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313; *People v. Sakalas* (1980), 85 Ill. App. 3d 59, 68, 405 N.E.2d 1121.

In the instant case, the two identifying witnesses viewed the defendant during the holdup under good lighting conditions, with an unobstructed view, and for a sufficient length of time to make an identification. Both witnesses made a positive in-court identification which the trial court found very persuasive and reliable. The defendant's testimony was that he did not commit the armed robbery. Where the evidence is irreconcilably conflicting, it is the particular prerogative of the trier of fact to ascertain the truth. (*People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313.) We find the evidence here sufficient to prove the defendant guilty beyond a reasonable doubt.

Next, defendant contends that the trial court abused its discretion when it struck, without an evidentiary hearing, his motion for a new

trial which was based upon the newly discovered evidence of his brother's statement that he committed the robbery at the Taco Bell restaurant. The trial court did strike the defendant's motion, stating that the absence of any statement of due diligence in discovering this evidence coupled with the defendant's statement at trial that he had been arrested a couple of times for what his brother had done was a fatal defect in the motion.

In *People v. Miller* (1980), 79 Ill. 2d 454, 404 N.E.2d 199, our supreme court restated the criteria to be considered in reviewing the circuit court's denial of a motion for a new trial based upon newly discovered evidence, as follows:

"A succinct and oft-cited summary of criteria to be considered in reviewing the circuit court's denial of a motion for a new trial is found in *People v. Baker* (1959), 16 Ill. 2d 364. The court there said: 'A motion for a new trial on the ground of newly discovered evidence is addressed to the discretion of the trial judge and denial thereof will not be disturbed upon review in the absence of a showing of an abuse of discretion. [Citation.] To warrant a new trial, the new evidence must be of such conclusive character that it will probably change the result on retrial, that it must be material to the issue but not merely cumulative, and that it must have been discovered since the trial and be of such character that it could not have been discovered prior to trial by the exercise of due diligence. [Citations.]' (16 Ill. 2d 364, 373-74.) In an earlier case, the court also held: 'Applications for a new trial on the ground of newly discovered evidence are not looked upon with favor by the courts, and in order to prevent, so far as possible, fraud and imposition which defeated parties may be tempted to practice, as a last resort, to escape the consequence of an adverse verdict, such application should always be subjected to the closest scrutiny by the court, and the burden is upon the applicant to rebut the presumption that the verdict is correct and to show there has been no lack of diligence. The matter is largely discretionary with the trial court, and the exercise of its discretion will not be disturbed except in case of manifest abuse.' (*People v. Holtzman* (1953), 1 Ill. 2d 562, 569; see also *People v. Reese* (1973), 54 Ill. 2d 51, 59; *People ex rel. Walker v. Pate* (1973), 53 Ill. 2d 485, 491-94.)" 79 Ill. 2d 454, 464-65, 404 N.E.2d 199.

In this appeal, the focus of our inquiry is whether the newly discovered evidence was of such a character that it could not have been discovered before trial by the exercise of due diligence. It has been

held that a motion for new trial alleging newly discovered evidence must be accompanied by the defendant's affidavit showing his lack of prior knowledge of this evidence and his due diligence in obtaining it. (*People v. Gray* (1981), 96 Ill. App. 3d 757, 762, 422 N.E.2d 45; *People v. Boyce* (1977), 51 Ill. App. 3d 549, 562-63, 366 N.E.2d 914.) The failure to attach an affidavit that the evidence could not have been discovered prior to trial by the exercise of due diligence has resulted in the denial of a motion for new trial without an evidentiary hearing. (See *People v. Gray; People v. Boyce*.) Even where there has been an evidentiary hearing, this court has held that the failure to exercise due diligence in discovering the evidence prior to trial is sufficient alone to deny the motion for new trial without reaching the issue of whether the evidence proposed would have properly warranted the granting of a new trial. (*People v. Moore* (1980), 81 Ill. App. 3d 614, 404 N.E.2d 276.) It is incumbent upon the defendant to show how he learned of the witness in order to establish the witness' previous inaccessibility. (*People v. Starr* (1976), 37 Ill. App. 3d 495, 501, 346 N.E.2d 410.) The court may look to the record to determine whether such evidence is newly discovered. See *People v. Pavic* (1982), 104 Ill. App. 3d 436, 450-51, 432 N.E.2d 1074; *People v. Petrovic* (1981), 102 Ill. App. 3d 282, 288-89, 430 N.E.2d 6.

In the instant case, there is no affidavit by defendant or his attorney showing a lack of prior knowledge of the new evidence and due diligence in discovering it; there is no indication in defendant's brother's statement relating when or why he disclosed his commission of the crime to defendant; there was no attempt by defendant to counter the lack of due diligence argument after the State filed its motion to strike on that basis; and there is evidence in the record that at trial defendant testified that a couple of times he was mistakenly arrested for his brother's crimes. At the hearing below on the State's motion to strike defendant's motion for a new trial, the defendant argued that an affidavit setting forth due diligence was unnecessary, that due diligence was an element to be proved at a later evidentiary hearing, and that he elected to stand upon his general allegation in his motion for new trial that "such evidence could not have been discovered prior to trial as *** defendant at the time of trial had no idea as to who committed said offenses and that the presence and location of Daniel Son was not known until after said trial." Under these circumstances, we find a total failure by defendant to represent by affidavit, or by any other competent method, that the newly discovered evidence could not have been discovered prior to trial by the exercise of due diligence. To prevent the possibilities of fraudulent claims of newly

discovered evidence, such motions for new trial are looked upon with disfavor by the courts and subjected to the closest inspection. (*People v. Wolf* (1977), 48 Ill. App. 3d 736, 741, 363 N.E.2d 402.) Where, as here, the record at trial indicates that defendant testified he was arrested before for his brother's crimes and defendant has failed to make any effort to support by affidavit or by other competent method his bare allegation in his motion for new trial that the evidence could not have been discovered before trial, we find no abuse of discretion in the dismissal of the motion without an evidentiary hearing.

In his brief, defendant has asserted that he was denied effective assistance of counsel by his trial counsel's failure to move to suppress his identification prior to trial, his failure to examine photographs, drawings and composites used by the witnesses before trial, his failure to call the police officers attending the pretrial identification procedures to determine the nature and circumstances of the pretrial identification process, and his failure to provide defendant's post-trial counsel with an affidavit regarding the due diligence employed in gathering any evidence of defendant's brother's involvement in the crime. The State contends this issue is waived by the failure of defendant's post-trial counsel to raise this in his written post-trial motion. In his reply brief, defendant contends he also has alleged the ineffective assistance of counsel by his post-trial counsel for his failure to specify ineffective assistance of trial counsel in the post-trial motion.

Examination of defendant's initial appellate brief indicates that no issue was raised pertaining to the effective assistance of his post-trial counsel. While the issue is raised in defendant's reply brief, this is in direct violation of Supreme Court Rule 341(e)(7) and (g) (87 Ill. 2d R. 341(e)(7), (g)) and we consider the point waived. (See *People v Slaughter* (1980), 84 Ill. App. 3d 88, 94, 404 N.E.2d 1058.) Rule 341 is applicable to criminal as well as civil appeals. Supreme Court Rule 612(i) (87 Ill. 2d R. 612(i)).

While defendant in his appellate brief did raise the ineffective assistance of his trial counsel, the failure to include this point in his written post-trial motion, in bench as well as jury trials, is a waiver of review of this contention appeal. (See *People v. Christiansen* (1981), 96 Ill. App. 3d 540, 542, 421 N.E.2d 570.) In *People v. Precup* (1978), 73 Ill. 2d 7, 382 N.E.2d 227, and *People v. Williams* (1981), 94 Ill. App. 3d 241, 256-57, 418 N.E.2d 840, additional counsel was permitted to enter the case and to participate in the preparation and argument of the motion for a new trial, but he failed to address the issue of ineffective assistance of counsel made on appeal. In both *Precup*

and *Williams* the issue was considered waived.

Even addressing the issue, we find no basis for reversal. The same standard in reviewing competency of counsel pertains to retained and appointed counsel. The standard is whether defendant's attorney was actually incompetent in carrying out his duty to his client to defendant's substantial prejudice. (*People v. Lovitz* (1981), 101 Ill. App. 3d 704, 710, 428 N.E.2d 727; *People v. Ortiz* (1981), 96 Ill. App. 3d 497, 421 N.E.2d 556.) Counsel's decision not to make a motion to suppress identification may be an error in judgment, but such an error does not establish incompetency. (See, *e.g., People v. Washington* (1968), 41 Ill. 2d 16, 21, 241 N.E.2d 425; *People v. Ortiz*.) However, trial counsel did move to strike both eyewitnesses' testimony after the State rested, on the basis of the pretrial identification procedures, and, as we concluded above, the procedures were not unduly suggestive. Trial counsel's failure to view the photographs and composite drawings referred to in the police reports and his failure to call police officers to testify relative to the pretrial identification procedures are tactical matters left to counsel's judgment. (See *People v. Greer* (1980), 79 Ill. 2d 103, 402 N.E.2d 203; *People v. Elder* (1979), 73 Ill. App. 3d 192, 391 N.E.2d 403.) Nor is there any substance to the argument that trial counsel failed to provide post-trial counsel with an affidavit regarding his diligence in gathering any evidence of defendant's brother's involvement in the crime. There is nothing in this record that indicates he received such a request, nor did he remain as counsel once post-trial counsel was substituted for him. Competency of trial counsel should be judged from the totality of his conduct at trial, not on the basis of what appellate counsel might have done in his stead. (*People v. Nutall* (1980), 91 Ill. App. 3d 758, 767, 415 N.E.2d 628.) From our review of the record, we conclude that trial counsel represented his client vigorously, ably, and on the whole, sufficiently to preclude a finding of incompetency.

■ Finally, defendant contends that the trial court should not have entered judgments of conviction on both the armed robbery and armed violence counts since they both arise out of the same physical act. Even though no sentence was imposed on the armed violence count, neither a judgment nor a sentence may be entered where the same physical act is the basis for both the armed violence and armed robbery charges. (*People v. Donaldson* (1982), 91 Ill. 2d 164, 170, 435 N.E.2d 477; *People v. Lucien* (1982), 109 Ill. App. 3d 412, 419, 440 N.E.2d 899; *People v. Tyllas* (1981), 96 Ill. App. 3d 1, 5, 420 N.E.2d 625.) Accordingly, the judgment of conviction entered on the armed violence count must be vacated.

For the foregoing reasons, we affirm the defendant's conviction and sentence for armed robbery, and we vacate the judgment of conviction for armed violence.

Affirmed in part and vacated in part.

UNVERZAGT and NASH, JJ., concur.