NOTICE
Decision filed 12/23/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 220058-U

NO. 5-22-0058

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Randolph County. |
| | ) | |
| v. | ) | No. 19-CF-295 |
| | ) | |
| ANTHONY J. ANDERSON, | ) | Honorable |
| | ) | Eugene E. Gross, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE BOIE delivered the judgment of the court.
Justices Welch and Moore concurred in the judgment.

**ORDER**

¶ 1   *Held*: We affirm the judgment of the trial court denying the defendant's posttrial motion for new trial, oral motion to continue the hearing on the defendant's motion for new trial, and the defendant's motion for turnover, where the defendant failed to exercise due diligence regarding the State's videographic evidence at trial.

¶ 2   On March 17, 2021, the defendant, Anthony J. Anderson, was found guilty of one count of battery, a Class A misdemeanor, in violation of section 12-3(a) of the Criminal Code of 2012 (720 ILCS 5/12-3(a) (West 2018)). The same day, the trial court imposed a fine and costs in the total amount of $500.

1

¶ 3    On June 4, 2021, the defendant filed a motion for new trial and/or motion to reconsider (motion for new trial). On December 2, 2021, the defendant filed a motion for turnover of the original digital surveillance footage of the incident (motion for turnover). The trial court conducted a hearing on the defendant's posttrial motions on January 5, 2022, and denied both motions in open court. The defendant now appeals arguing that the trial court erred in denying the defendant's oral motion to continue the hearing on the defendant's motion for new trial, and that the trial court erred in denying the defendant's posttrial motions. For the following reasons, we affirm the judgment of the trial court.

¶ 4                                    I. BACKGROUND

¶ 5    On January 21, 2019, the defendant was employed at the Chester Mental Health Center as a security therapy aide when there was an altercation between the defendant and one of the patients. During the altercation, the defendant pushed the patient in the stomach and made contact with the patient's face with his right hand. The defendant waived his right to a jury trial and a bench trial was conducted on March 17, 2021. At trial, the defendant presented an affirmative defense wherein he admitted that he had made physical contact with the patient, but asserted that he was justified in the use of force to the extent that he reasonably believed that such force was necessary to defend himself and others from bodily harm. The trial court held that the defendant had not proven the affirmative defense and, therefore, found the defendant guilty of one count of battery, a Class A misdemeanor, in violation of section 12-3(a) of the Criminal Code of 2012 (*id.*).

¶ 6    The trial court stated, when making its finding of guilt in open court, that "the video is the key piece of evidence here because if it wasn't on video, then it's [the defendant] and

2

[witness's] word against each other." The video referenced by the trial court was the Chester Mental Health Center's surveillance video, presented by the State and admitted, without objection, as People's Exhibit 1 (surveillance video). The surveillance video evidenced the incident, and was viewed and referenced throughout the trial.

¶ 7     Illinois state trooper Jared Freeman testified at trial that, on February 1, 2019, he had interviewed the defendant regarding the incident and had shown the defendant the surveillance video in its entirety. Specifically, Freeman testified that "[a]nd I advised him that I didn't want to fast-forward to the point of the actual incident started. I wanted him to see the entirety of the video." The defendant was present at trial when the surveillance video was shown and/or referenced, including being shown and referred to by the defendant. The defendant testified that he had viewed the surveillance video "a million times." There were no pretrial motions regarding the surveillance video and the defendant did not object to any portion of the surveillance video at trial. The defendant also did not indicate any discrepancies within the surveillance video during his testimony.

¶ 8     After trial, on April 12, 2021, the defendant filed a motion for extension of time to file a posttrial motion stating that the obtainment of the trial transcript would take at least two weeks and the transcript was needed for the defendant's posttrial motion. The trial court granted the motion and provided an additional 28 days for the defendant to file any posttrial motions. On May 14, 2021, the defendant filed a second motion for extension of time to file a posttrial motion. The defendant's second motion for extension of time stated that the defendant was waiting on a report from an expert in support of his posttrial arguments, and that the report was expected to be available by May 28, 2021. The

defendant's second motion for extension of time did not indicate the nature of the expert's report. The trial court granted the defendant's second motion for extension of time and allowed the defendant until June 2, 2021, to file any posttrial motions.

¶ 9     On June 2, 2021, the defendant filed his third motion for extension of time to file a posttrial motion. The defendant's third motion for extension of time stated that the expert's report had not been received, but that it was expected to be delivered that afternoon. The defendant's third motion for extension of time further stated that the "[d]efendant is in possession of the expert's non-evidentiary preliminary report which opines that a video disclosed as evidence has been tampered with and/or had been altered to obscure portions of the time in the video evidence." The defendant's third motion for extension of time was granted by the trial court and the defendant filed his motion for new trial on June 4, 2021.

¶ 10    The defendant's motion for new trial alleged that "[a]t the time of trial, the defendant had questions regarding the validity of the video evidence which had been provided by the investigative division of Chester Mental Health, however, defendant had no evidence to present regarding the veracity of its contents." The defendant's motion for new trial went on to state that he had engaged an expert to review the video evidence, but that the results of the analysis of the video evidence were not available to the defendant at the time of trial. Finally, the defendant's motion for new trial stated that the expert had determined that "in several locations a Black Screen had been inserted and frames had been obscured in the recording."

¶ 11    The expert's report was attached as an exhibit to the defendant's motion for new trial. The report indicated that the defendant had retained the expert on March 3, 2021, and

4

that the expert had issued a "Phase I Report dated March 11[th], 2021." The report also stated that a Phase II examination had been completed on June 3, 2021. The report indicated that the expert had analyzed three video files[1] that had been provided by the defendant. The report stated, in its summary and conclusion section, that there were "a couple specific visual anomalies and uncertainties that bring into question the integrity of the videos" and that the cause of the empty frames within one of the videos could not be determined without an examination of the original DVR system/hard drive.

¶ 12    The defendant's motion for new trial argued that "[a]s a result of the new evidence discovered by the defendant's expert after trial, the defendant demands a new trial, which should be preceded by defendant's proper motion to strike the video evidence," or in the alternative, that the trial court reconsider its prior finding of guilty and enter a verdict of not guilty. The trial court set the matter for a hearing on the defendant's motion for new trial on September 30, 2021. On September 27, 2021, the defendant filed a motion to continue the hearing requesting an additional 45 to 60 days in order to arrange for the defendant's expert to be present and testify at the hearing. The trial court granted the defendant's motion and reset the hearing for December 9, 2021.

¶ 13    Almost six months after filing his motion for new trial, on December 2, 2021, the defendant filed a motion for turnover. The defendant's motion for turnover stated that the defendant's expert required the original digital footage for examination in order to prepare

---

[1]The video file ending in 5112.mp4 is identified on the frames as "Nurses Station," the video file ending in 3515.mp4 is identified on the frames as "Stem Door," and the video ending in 4911.mp4 is identified on the frames as "North Day Room." The video indicated on the frames as "Stem Door" was the only surveillance video presented at trial.

his testimony in support of the defendant's motion for new trial. The same day, the defendant filed a second motion to continue the hearing stating that, upon receipt of the original digital footage, the defendant's expert would need additional time to review the original digital footage and prepare his testimony. As such, the defendant's second motion to continue requested that the trial court continue the hearing an additional 60 to 90 days.

¶ 14    On December 7, 2021, the State filed a response to the defendant's motion for turnover and motion for new trial. In its response, the State indicated that the defendant had received the surveillance video pursuant to a discovery request in April 2019, and had also received the surveillance video pursuant to two subpoena *duces tecum* executed by the defendant's counsel with return dates of April 18, 2019, and March 17, 2020. The State's response also noted that the defendant's trial had been continued, for various reasons, from January 24, 2020, until March 17, 2021, and that the defendant had not retained the expert until two weeks prior to trial on March 3, 2021. The State's response further noted that the expert had issued an initial report to the defendant on March 11, 2021, six days before the trial. As such, the State's response argued that the defendant had the expert's report prior to trial and that at no point during the trial did the defendant indicate, in any manner, that it was not a true and accurate copy of the surveillance video. The State's response further argued that, if the defendant questioned the integrity of the surveillance video, he could have retained an expert in 2019, 2020, or earlier in 2021. Finally, the State's response argued that the defendant had not demonstrated how the alleged improprieties were material. Therefore, the State's motion argued that the defendant lacked due diligence and other factors to warrant a new trial due to the alleged new evidence.

¶ 15    The defendant filed a reply to the State's response arguing that the defendant had produced the opinion of an expert in digital forensics stating that the video evidence, provided to the defense via discovery and by subpoena, purporting to show footage of the alleged occurrence, had been altered and, as such, was tainted. Therefore, the defendant alleged that a fraud had been committed upon the court which amounted to the deprivation of a constitutional right of the defendant to a fair trial which required reversal. The defendant's reply also stated that the defendant had limited funds to afford the cost of the expert at the onset and during the pendency of the matter, and that the defendant was not in receipt of the expert's findings until after trial.

¶ 16    On January 5, 2022, the trial court held a hearing on the defendant's posttrial motions. At the beginning of the hearing, defense counsel indicated that he was prepared to proceed on the defendant's motion for turnover. Defense counsel further informed the trial court that the expert had not been brought to the hearing because of the cost, and that the expert's presence would have possibly been for naught since the motion for turnover was pending. As such, defense counsel stated that he was prepared to argue the motion for turnover, but if the motion for turnover was denied, he was not prepared to argue the defendant's motion for new trial since the defendant's expert was not present.

¶ 17    The trial court heard arguments on the defendant's motion for turnover and denied the same, stating as follows:

> "I'm not going to grant the motion to turn over the tape at this point in the trial—the proceeding because, you know, it's not really newly discovered evidence at this point. I read the report and the attachment and the motions,

and the State—I don't think there's any real dispute concerning the timeline of how things developed when the case was filed, when the discovery was provided. I know there's an issue about whether or not the tape has ever been —and honestly, I don't know how the actual DVD that we saw in court came to be delivered to you in discovery, but there was more than enough time to address those issues before trial."

The trial court further noted that "it might have been good grounds for a motion to continue the trial, that we needed additional time to determine whether or not there has been some fraud."

¶ 18 After the trial court's ruling on the defendant's motion for turnover, defense counsel stated as follows:

"Your Honor, I'm not prepared to argue [the motion for new trial] without the expert, and it seems clear that he needs to be here to explain the contents of his report for the Court's purposes, at least hearing what you've been saying, your Honor. My client does have the funds and is able to obtain his presence at the next court date, and we'll be ready to proceed at that time."

¶ 19 In response, the State requested that the defendant's motion for new trial be dismissed without a hearing because, even assuming the expert's report to be true, it was not a valid reason for a new trial based upon the reasons set forth in the State's response. The State argued that the expert did not opine that there was any fraud and that there was no evidence, not even from the defendant, to indicate the potential contents of the missing frames. The State further argued that there was nothing in the expert's report to refute the

8

testimony at trial that the defendant made contact of an insulting or provoking nature to a patient at the Chester Mental Health Center on the date in question.

¶ 20　　The trial court indicated that it was inclined to proceed to a hearing on the motion for new trial. The trial court heard arguments from the parties and then discussed the contents of the expert's report. The trial court noted that the expert's report indicated that the missing portions were within the surveillance video of the nursing station, which was not viewed at trial. The trial court also noted that no one present in the nurse's station testified at trial. The trial court heard further arguments by the parties, including defense counsel's argument that the trial court was misinterpreting the expert's report. Defense counsel also stressed again that the defense had no knowledge, at the time of trial on March 17, 2021, that there was an issue with the State's videographic evidence. The trial court confirmed with defense counsel that the surveillance videos, examined by the defendant's expert, were disclosed prior to trial. As such, the trial court denied the defendant's motion for new trial.

¶ 21　　The defendant now appeals the judgment of the trial court arguing that the trial court erred in denying the defendant's oral motion to continue the hearing on the defendant's motion for new trial. The defendant also argues that the trial court erred in denying the defendant's posttrial motion for turnover and motion for new trial.

¶ 22　　　　　　　　　　　　　　　II. ANALYSIS

¶ 23　　The three issues presented by the defendant for this court's review center on the surveillance video viewed and referenced during the defendant's trial. The trial court held that the surveillance video was not new evidence since it was available to the defendant

9

prior to trial. As such, the trial court found that the defendant had failed to exercise due diligence[2] regarding the State's videographic evidence. Based upon that finding, the trial court denied the defendant's motion for turnover, oral motion to continue the hearing, and motion for new trial. Therefore, we will first address whether the trial court erred in its determination that the defendant failed to exercise due diligence regarding the State's videographic evidence at trial since it is dispositive to the issues on appeal.

¶ 24    A defendant seeking relief on the basis of newly discovery evidence bears the burden of demonstrating that there has been no lack of due diligence on his or her part. *People v. Harris*, 154 Ill. App. 3d 308, 318 (1987). Newly discovered evidence must be evidence that was discovered after trial that the defendant could not have discovered sooner through due diligence. *People v. Ortiz*, 235 Ill. 2d 319, 334 (2009). Whether a party has exercised due diligence is a question that must be determined on a case-by-case basis after careful review of the particular circumstances presented, and this court will not overturn a trial court's ruling on due diligence unless it amounts to a clear abuse of discretion. *People v. Spears*, 395 Ill. App. 3d 889, 893 (2009). A trial court abuses its discretion when its decision is either arbitrary, unreasonable, or where no reasonable person would take the trial court's view. *Id*. The failure to exercise due diligence in discovering the evidence before trial is sufficient alone to deny a new trial without reaching the issue of whether the

---

[2]The trial court did not use the specific term of "due diligence," but found that "there was more than enough time to address those issues before trial," which we find equates to the exercise of due diligence.

evidence would otherwise have warranted a new trial. *People v. Son*, 111 Ill. App. 3d 273, 283 (1982).

¶ 25    In this matter, the defendant acknowledges that a portion of the evidence was available prior to trial, but argues that the anomalies within the surveillance video were not visible to the naked eye and required an expert's analysis to determine what the anomalies were and their meaning. The defendant argues that, once he had formed a belief that there may be an issue with the videographic evidence, he expended great sums of his personal finances to retain an expert, although he had lost his employment and his ability to afford an expert was greatly diminished.  As such, defendant argues that he worked as diligently as he was able.

¶ 26    The defendant, however, failed to attach an affidavit to his motion for new trial evidencing when he had become aware of a potential issue with the surveillance video and setting forth his diligence in obtaining the new evidence. See *People v. Gray*, 96 Ill. App. 3d 757, 762 (1981) ("motion for a new trial alleging newly discovered evidence must be accompanied by the defendant's affidavit showing his lack of prior knowledge of this evidence and his diligence in obtaining it"); see also *People v. Boyce*, 51 Ill. App. 3d 549, 565 (1977). At the hearing on January 5, 2022, defense counsel stated that:

> "But what I'm saying is that there was no knowledge at the time we went to
>
> trial on March 17, by the defense, that there was an issue with these videos.
>
> I can't object to something that I don't have knowledge of. We did not
>
> receive the report regarding these videos until after the trial on the 17th. Well,
>
> I didn't receive it. But the point is, so I can't object to something I don't

11

know about. *** Did we suspect? Sure we did. But there's still no objection that can reasonably be made because I don't have any evidence to base it on, and it's frivolous. So when we found out about it obviously at the trial, we began the process of preparing a posttrial motion, but the initial analysis that we received in March is not evidentiary. So we—that's why we didn't received it until June."

¶ 27 Although the defendant did not receive the expert's evidentiary report until June, he had retained the expert and received the expert's initial analysis report prior to the trial. As such, the defendant had knowledge, whether or not it was evidentiary, that there may have been an issue with the surveillance video at the time of trial and yet failed to notify the trial court that he had retained an expert to conduct an analysis of the surveillance video. The defendant also failed to request a continuance of the trial until the expert's report was received. A motion to continue the trial, based upon the retention of the expert and the expert's initial report, would have notified the trial court of a potential issue with the surveillance video, and allowed the trial court an opportunity to continue the trial until the expert's evidentiary report was received.

¶ 28 We further note that the defendant had the surveillance video since 2019, and by his own testimony, had viewed the surveillance video "a million times." The defendant was aware of the contents of the surveillance video and that the surveillance video would be utilized by the State at trial. There was no element of surprise in the State's videographic evidence. The record reflects, however, that the defendant did not retain an expert until two

12

weeks prior to trial and the only justification proffered by the defendant was the cost involved in retaining the expert.

¶ 29    While we understand the financial constraints that many defendants face in obtaining an expert, the costs alone do not explain the defendant's failure to notify the trial court that he intended to retain an expert at the time he suspected a potential issue with the surveillance video. Further, that hurdle was overcome when the expert was retained, and an initial report was received prior to trial. At that point, due diligence would require nothing less than a motion to continue the trial. Therefore, we find that trial court did not abuse its discretion in determining that the defendant failed to exercise due diligence regarding the surveillance video where its decision was not arbitrary, unreasonable, or where no reasonable person would take the trial court's view.

¶ 30    Proceeding now to the issues on appeal, the defendant argues that the trial court erred in denying the defendant's motion for new trial. The defendant states that the trial court misapprehended the findings and conclusion of the expert's report. The defendant states that the expert reviewed two distinct and separate videos—one viewing the nursing station and the other a view of the hallway. The defendant argues that the expert's report stated that one of the videos had definitely been altered and that the second video was inconclusive pending further analysis. The defendant argues that the trial court believed that the expert was talking about a single video and that the expert's analysis of that video was inconclusive. Therefore, the defendant argues that trial court erred in denying the defendant's motion for new trial.

¶ 31 Newly discovered evidence warrants a new trial when the evidence (1) has been discovered after trial, (2) could not have been discovered prior to trial through the exercise of due diligence, (3) is material to the issue and not merely cumulative, and (4) is so conclusive that it would likely change the result the result upon retrial. *People v. Harris*, 2020 IL App (5th) 160454, ¶ 52. Motions for a new trial based on newly discovered evidence are not favored and are subjected to the closest scrutiny. *People v. Rush*, 294 Ill. App. 3d 334, 344 (1998). The decision to grant a new trial based on newly discovered evidence is within the sound discretion of the trial court and will not be disturbed absent a showing the trial court abused its discretion. *Id.*

¶ 32 In this matter, as we addressed above, the trial court determined that the defendant failed to exercise due diligence regarding the State's videographic evidence. As such, any potential misunderstanding on behalf of the trial court concerning the expert's findings regarding the surveillance videos is irrelevant because the expert's findings have no bearing on the issue of due diligence. The relevant portions of the expert's report, as they relate to due diligence, are the date the expert was retained and the dates that the expert's reports were received by the defendant.

¶ 33 The defendant argues that the evidence provided by his videographic expert was of such a conclusive nature that it would probably change the results of the trial; however, such argument goes to the fourth element in the determination of whether the new evidence would warrant a new trial. Here, the defendant failed to meet the second element necessary for the granting of a new trial in that the trial court determined that the new evidence could have been discovered prior to trial if the defendant had exercised due diligence. The

14

defendant's failure to exercise due diligence was sufficient by itself for the trial court to deny a new trial without reaching the issue of whether the evidence otherwise would have warranted a new trial. *Son*, 111 Ill. App. 3d at 283. Therefore, we find that the trial court properly denied the defendant's motion for new trial based on the defendant's failure to exercise due diligence, and as such, the trial court's denial of the defendant's motion for new trial was not an abuse of its discretion.

¶ 34 The defendant also argues that the trial court erred in denying the defendant's oral motion to continue the hearing on the defendant's motion for new trial. The defendant states that his defense counsel was under the impression that the hearing was solely on the defendant's motion for turnover since, procedurally, the motion for turnover would need to be addressed before a hearing could be held on the defendant's motion for new trial. The defendant also states that, on December 2, 2021, he filed a written motion to continue the hearing requesting a 60- to 90-day continuance to schedule his expert to appear at the hearing. The trial court, however, set the matter to proceed on January 5, 2022.

¶ 35 The defendant further states that the continuance was needed in order to secure the live testimony of his expert to explain the technical language of the expert's report. The defendant argues that the trial court stated, no less than 14 times during the hearing, that it did not understand the report and/or was incapable of contemplating the report's meaning by simply reading the language of the report. The defendant argues that, despite the repeated offers by the defendant to bring the expert before the trial court to explain the findings, the trial court denied the defendant's request for a continuance. As such, the

15

defendant argues that the trial court erred in denying the defendant's oral motion to continue the hearing.

¶ 36    The decision to grant or deny a motion for a continuance lies with the discretion of the trial court and will not be disturbed on appeal absent a clear abuse of discretion. *People v. Walker,* 232 Ill. 2d 113, 125 (2009). We agree that the record reflects numerous times where the trial court admitted to not understanding various technical terms within the expert's report and that the trial court acknowledged that an expert was needed to explain the various findings. Continuing the hearing and bringing the expert before the trial court, however, would have been an exercise in futility and a waste of judicial resources. Even if the expert appeared at a later hearing, and testified to each and every anomaly that he or she may have determined within the surveillance video, such testimony would apply to whether the new evidence would have warranted a new trial. Again, the defendant's failure to exercise due diligence in discovering the evidence before trial was sufficient by itself for the trial court to deny a new trial without reaching the issue of whether the evidence otherwise would have warranted a new trial. *Son*, 111 Ill. App. 3d at 283. As such, the expert's testimony related to an element of the defendant's motion for new trial that became moot upon the trial court's determination that the defendant had failed to exercise due diligence. Therefore, we find that the trial court did not abuse its discretion in denying the defendant's oral motion to continue the hearing.

¶ 37    Finally, the defendant argues that the trial court erred in denying his motion for turnover. Again, the trial court denied the defendant's motion for turnover based on the defendant's lack of due diligence in obtainment of the new evidence prior to trial. As

previously stated, while we understand the financial restraints that many defendants face, those restraints do not excuse the defendant's failure to notify the trial court once an expert had been retained and an initial report was received. We further note that the expert's report of June 3, 2021, indicated that an examination of the original DVR system/hard drive was needed, yet the defendant did not file his motion for turnover until almost six months later on December 2, 2021. Not only did the defendant fail to exercise due diligence prior to trial, the defendant was aware that the expert needed the original footage to complete his analysis, yet the defendant waited until shortly before the scheduled hearing on his motion for new trial to file his motion for turnover. Therefore, we find that trial court did not abuse its discretion in denying the defendant's motion for turnover.

¶ 38                                 III. CONCLUSION

¶ 39    For the foregoing reasons, we affirm the judgment of the trial court denying the defendant's posttrial motion for new trial, oral motion to continue the hearing, and motion for turnover, where the defendant failed to exercise due diligence regarding the State's videographic evidence at trial.


¶ 40    Affirmed.